## CLEMENTS v. MARSTON.

Under our statutes neither interest nor infamy is any disqualification as a witness, whether as a party or otherwise.

Nor are those disqualifications any longer operative, which, being founded upon grounds of public policy, such as the fear of producing dissensions and strife in families and encouraging perjury, were held at common law sufficient to exclude husbands and wives from testifying for or against each other in all cases.

Instead, therefore, of the common law rule that the wife could not testify for or against her husband, and *vice versa*, for the double reason that their interests were identical, and that it was also contrary to sound public policy, the rule in this State now is that husband and wife may elect and be compelled to testify for or against each other in all cases where the court can see that their examination as witnesses upon the points to which their testimony is offered will not lead to a violation of marital confidence.

Therefore, when one party to a suit is an executor or administrator, and does not elect to testify, although the other party is thus precluded from being a witness, yet his wife. may be called as a witness, either for or against her husband, where no violation of marital confidence is involved.

Conversations between the husband and third persons, and which were heard by the wife, would not ordinarily come within this exception.

And when the wife acted as the agent of the husband, in a matter requiring no special confidence, and where no such confidence is bestowed, and where any other person could have acted just as well, she may ordinarily state any facts learned in the course of such agency.

Where any part of the consideration of a contract is illegal, that may vitiate the whole contract; but where a part of the consideration of a contract with one party is a contract of the other party, which is. void or voidable, but not illegal, that does not taint the whole consideration, or make void what would otherwise be valid.

*Crawford* v. *Parsons*, 18 N. H. 293, questioned.

ASSUMPSIT, by Charles W. Clements against Weare Marston, on an account annexed for boarding the defendant, labor, &c., between April 1 and July 17, 1869. The defendant has died since the commencement of the suit, and his administrator defends, and said administrator did not elect to testify. Against the defendant's objection, the wife of the plaintiff was admitted, and sworn as a witness for the plaintiff, generally, in the cause, and her testimony related to matters within the knowl-

edge of the deceased, and concerning which he might have testified. Said wife was permitted to testify to conversations of the deceased with and in the presence of her husband ; also, that she kept the plaintiff's money at the time the account in the declaration accrued, and as to the amount of that money, and how it was expended, and that the same was expended at the time the deceased is said to have boarded with the plaintiff, as stated below. The plaintiff's counsel stated, in his opening, that the plaintiff went to live with the deceased upon a verbal agreement between them that the plaintiff should come on to the farm and take care of him as long as he lived, and have his property, consisting of a farm and personal property ; that it was the understanding that proper papers should be executed between them, to carry this agreement into effect ; that the plaintiff accordingly went with his family, and remained fifteen weeks, when, upon refusal by the deceased to make writings, he left.

Mrs. Clements, the wife, testified that Marston told her and her husband that if they would go and live with him as long as he lived, he would give them his property ; and they agreed to go upon those terms, and afterwards went.

Albert D. Brown, a witness called by the defendant, on cross-examination, testified that Marston told him the same thing in substance ; and also, that Marston told him on one occasion that he didn't know exactly what Clements was going to leave for, only that he wanted a title to his place, and he should n't give it to him ; said he should n't give Clements any writing. There was no other evidence in the case bearing upon the contract.

The defendant moved for a nonsuit, which was denied.

The defendant claimed that this evidence showed a contract that the plaintiff should go and live with the deceased, and take care of him during his lifetime, and be paid for such service by his property ; and that, until some breach by the deceased was shown, no action could be maintained for anything done or furnished by the plaintiff, while living with him, under such circumstances, until after Marston's death. The plaintiff claimed that the evidence did not show any completed contract, but merely a verbal understanding, which was to be carried into effect by the execution of writings that would secure to the plaintiff the property in question.

The court told the jury that it was for them to say whether such a contract as the defendant claimed was in fact made; that, if they found so, the plaintiff could not recover; but if they found that no contract was completed between the parties, but that the plaintiff went to live with Marston in expectation that such contract would be completed, then the plaintiff would be entitled to receive such sum as his labor, &c., were reasonably worth; to which the defendant excepted. The jury returned a verdict for the plaintiff, which the defendant moves to set aside, for the above reasons, and, also, because it was against evidence, and without sufficient evidence to justify the same.

The case was reserved.

*Hatch* and *Page*, for the defendant.

I. The admission of the wife as a witness was an error.   If she was a competent witness, she must have been made so by Gen. Stats., ch. 209, secs. 20–22.

Now, the defendant's administrator not being a witness, the plaintiff, by the wise provisions of our statute, is not allowed to testify.   But to permit the plaintiff's wife to become a witness seems at once to do away with the whole force of this statute, and leaves the defence at the mercy of the plaintiff's conscience as completely as though he himself might be a witness.   We submit that the husband and wife are so far one in the eye of the law, and their interests so closely connected, that in a case like this she cannot testify for her husband against the dead man, any more than the husband himself can ; and the legislature could not have intended any such injustice.

In *State* v. *Moulton*, 48 N. H. 485, the court deny that the legislature intended that the wife should testify for the husband in a case where he cannot testify for himself.   See last paragraph but one of the opinion by SARGENT, J., page 486, which goes directly to the point.

II. The testimony given by the wife in this case belongs to that class which is expressly declared incompetent by the statute.   (1) Gen. Stats., ch. 209, sec. 21, provide that sec. 20 " shall not be so construed as to render competent their testimony as to any statement, conversation, letter, or other communication made by either of them to the other, *or to any other person ;*" and sec. 22, by the words " in any case," cannot enlarge the limitation before made in sec. 21.   The wife was here permitted to testify to " conversations of the deceased with and in the presence of her husband," which fall within the exact letter of the statute proviso.   And, moreover, such conversations and communications were matters of marital confidence : that is, they were conversations which she heard and secrets which she obtained through her peculiar relation as the wife of the plaintiff, and were not admissible.   (2) The testimony as to keeping her husband's money, its amount, how it was expended, and so forth, was clearly a violation of marital confidence, such as is intended by the statute.   She could not have gained a knowledge of how much money the plaintiff had, and how it was expended, except through her intimate relation as his wife. It was an exposure of the plaintiff's domestic affairs which none but his wife could know.   Her knowledge as to how it was expended by him must, from the nature of things, have been derived through communications from him, and her answers in this particular might well have been injurious to the plaintiff, and distrust created, and dissensions sown between them—the very thing which this statute, forbidding the violation of " marital confidence," is designed to remedy.

III. The motion for a nonsuit should have prevailed.

(1) The action was premature.   The only evidence as to the bargain came from Mrs. Clements, which was, " if they would go and live with him [the defendant] as long as he lived, he would give them

his property; and they agreed to go upon these terms, and afterwards went." No action could be maintained by the plaintiff for what he had done or furnished under these circumstances, until it was apparent that the defendant would not pay as he had agreed to, *i. e.*, until his death. We respectfully insist that the contract proved, fairly construed, means that the defendant, at his decease, or by his will, would reward the plaintiff for his services by giving him his property.

(2) There was no evidence on the contract, as proved, to submit to the jury, this being an action of assumpsit for board, labor, &c. This is a proper matter for the determination of this court. *Commonwealth* v. *Packard*, 5 Gray 101.

IV. The exception to the charge should be sustained.

(1) The jury should have been instructed that if they found the contract to be as the plaintiff claimed, yet the defendant had his lifetime in which to carry it into effect; or, at least, that the plaintiff must show some breach on the defendant's part before an action could be maintained. On the day the plaintiff left the defendant, it did not appear but that he would convey to the plaintiff his property on the next day if the plaintiff had remained. No demand by the plaintiff for a conveyance was shown; and the defendant might have satisfied even the plaintiff's version of the contract, and barred any claim of the plaintiff, by securing to him the property at any time up to the day of his death.

(2) The specification was for fifteen weeks' board of the defendant, for labor on his farm, and for money expended for nails, &c., used on the farm. The jury should have been instructed that if the contract was as claimed by the plaintiff, yet he could not recover, at least for the labor and money expended, unless the defendant had turned him out of possession of the farm, or notified him to quit, or excluded him from the enjoyment of his labor and improvements, because, if the plaintiff had voluntarily abandoned the defendant's farm and given up the contract, he must be deemed to have waived all claim to compensation. *Miller* v. *Tobie*, 41 N. H. 84.

At what particular time did the plaintiff's right to sue under the contract, as claimed by him, arise? Surely, not the moment he had done a day's work, or bought a pound of nails. Yet the jury were instructed that if they found the contract to be as the plaintiff claimed, he was entitled to a verdict, without any limitation whatever.

V. The verdict was manifestly against evidence, and without sufficient evidence to sustain it, and should be set aside. *Chase* v. *Breed*, 5 Gray 440; *Commonwealth* v. *Packard*, *ib.* 101; *Commonwealth* v. *Merrill*, 14 Gray 417; *Brightman* v. *Eddy*, 97 Mass. 478; *Kohne* v. *Ins. Co. of North America*, 1 Wash. C. C. Rep. 123.

It is not the "natural, probable, and logical conclusion" from the evidence in regard to the contract, all of which is before the court.

The claim of the plaintiff's counsel in his opening, if proved, might, perhaps, have entitled him to a verdict, but it would have run very close to the wind. It is apparent, however, that he wholly failed to prove

any such contract as he claimed. Mrs. Clements is the only witness who undertakes to show what the contract was ; and her testimony, we say, proves a different contract. Brown's testimony as to what the defendant told him agrees with Mrs. C.'s understanding of it. Even if the existence of such a contract as he claimed had been proved, the plaintiff showed no breach by the defendant. If what the defendant told Brown shows what the defendant thought about it, yet there is no evidence that he ever had any talk on the subject with the plaintiff; certainly he never had any with his wife, or, that she knew, with the plaintiff.

Then, taking the view most favorable for the plaintiff, the burden of proof was on him to show,—

(1) A contract such as his counsel claimed in opening.

(2) A breach of it by the defendant.

If he failed in either point, there was no evidence to justify a verdict for him. The case sets forth all the evidence bearing on the contract, produced on either side ; and we respectfully submit that there is not a shadow of evidence to prove either point.


*Wiggin* and *Leavitt*, for the plaintiff.


I. The wife was a competent witness. She was neither a party to the record nor a party in interest. No disqualification can be suggested, except that she was the plaintiff's wife ; and the legislature has seen fit to enact—whether wisely or unwisely is not for us to discuss or the court to determine—that that relationship shall neither disqualify nor exempt from testifying. Gen. Stats., ch. 209, sec. 22, amended by ch. 20, laws of 1870.

Interest, except as a party, does not disqualify a person from being a witness against an administrator. *Wheeler* v. *Towns*, 43 N. H. 56. The court will not extend the statute by construction, so as to create exceptions not within its terms. *Crawford* v. *Robie*, 42 N. H. 162.

II. The subjects upon which the plaintiff's wife was examined were not within the exception named in the statute.

We claim that it was the intention of the legislature to take away entirely both the disqualification and the exemption existing at common law, depending upon the *existence and continuance* of the marriage relation, and based upon " identity of interest " and the " fear of sowing dissension between husband and wife, and occasioning perjury," and to *allow* and *require* each to testify to facts within their *knowledge* not confided to them by the other. Confidential communications between husband and wife are protected from disclosure after the marriage relation has ended by divorce or death—1 Greenl. Ev., secs. 254, 337 ; *Coffin* v. *Jones*, 13 Pick. 441 ; *Stein* v. *Bowman*, 13 Peters 222—and whatever would be protected from disclosure after the marriage relation had ceased, is equally protected from disclosure while the relation continues, and nothing more. Legislation has been progressive. The law of 1866, incorporated into secs. 20 and 21 of ch.

209, Gen. Stats., sought to preserve the general policy of the common law, and only to engraft upon it a few exceptions where the reasons upon which it was based did not apply directly, or the rule of exclusion worked more apparent hardship; but section 22, as amended, has introduced a radical change in the policy of the law, and removed the disability of the marriage relation as completely as previous statutes had removed that of interest. Husband and wife can still make each other their confidants and counsellors, but can no longer be *debarred* or *excused* from testifying to what they know, when their knowledge is not derived from each other. If section 21 is held to modify section 22, the testimony of the plaintiff's wife in the case would not be excluded, as it is evident from the case that her evidence related to the statements of the defendant, made to induce the plaintiff to go and reside with and take care of him, and not to the statements of the plaintiff. As to her testimony that she kept her husband's money at this time, and how it was expended, she was acting as her husband's agent, and could properly testify to her acts as such, aside from the statute. *Littlefield* v. *Rice*, 10 Met. 287. The suggestion that she was allowed to testify to what her husband told her is not true in fact. We suggest that the points upon which husband and wife can be examined must be left to the discretion of the court at the trial, and its rulings are not the subject of exception. *Ryan* v. *Follansbee*, 47 N. H. 100.

III. The instructions as to the contract were in accordance with the claim of the defendant, and the exception is to the *verdict*, and not to the *ruling of the court*. They were too favorable to the defendant. The contract was verbal, related to land, and was clearly within the statute of frauds. *Ham* v. *Goodrich*, 33 N. H. 32; *ib.*, 37 N. H. 185. It could not be set up by the plaintiff to support his action, or by the defendant to aid his defence, and was simply immaterial, except as showing the circumstances under which the plaintiff's claim arose. It could not be enforced by the plaintiff, and was therefore not binding upon him, and he could quit the premises at any time and bring his suit. The case of *Crawford* v. *Parsons*, 18 N. H. 293, is exactly in point upon this question.

SARGENT, J. At common law, a party to a cause could not testify, on the ground that he was interested. Any person not a party, if interested in the result of the suit, was excluded as a witness on the ground of interest. Wives were excluded,—1st, on the ground of interest, they being interested wherever their husbands were; and 2d, upon the ground of public policy, that it was not expedient to place husband and wife in a position that might lead to dissensions and strife between them, or that might encourage perjury. Hence, wives were not allowed to testify for or against their husbands when they were parties to civil proceedings, and, for the same reason, both were excluded when either was a party in a criminal case.

The first inroad upon this system in this State was when the statute

empowered auditors to examine parties upon oath. This was construed as not including the wife of the party, for the reason that she was not ordinarily a party, and did not become a party because her husband was, though equally interested with him. And there is no doubt that this construction of the law was in accordance with the intention of the legislature, for this decision excluding the wife—*Randlet* v. *Herren*, 20 N. H. 538—was made in January, 1847; and no attempt to change the law in that regard was made until there had been a general overturning of the principles of the common law in relation to the competency of witnesses.

Afterwards the statute provided that the debtor might be a competent witness in a trial between plaintiff and trustee. In that case, also, the debtor's wife was excluded—*Coburn* v. *Mellen*, 19 N. H. 198, decided July, 1848—and for the very sufficient reason that the terms of the statute making the exception to the common law rule, as in the case of auditors, were not broad enough to include her.

So the law of 1857, ch. 1952, provided that no person should be excused or excluded as a witness by reason of interest as a party or otherwise. This was held not to include the wife of the party. *Kelley* v. *Proctor*, 41 N. H. 139; *Breed* v. *Gove*, 41 N. H. 452; *Wheeler* v. *Towns*, 43 N. H. 56; *Smith* v. *Railroad*, 44 N. H. 325. And how could this law have received a different construction with any propriety ? The disqualification of interest was alone removed by that statute. But that was not the only ground upon which the wife of a party had been excluded at common law. The other ground—that based on public policy—was untouched, and remained in its full force.

It was also held that this law of 1857, and also the law of 1858, did not and was not intended to apply to criminal cases, for reasons which seemed sufficient to the bench and bar of the State, and also to the legislature, as they made no attempt for many years after that decision to modify the law in that respect. *State* v. *Flanders*, 38 N. H. 324; *State* v. *Connell*, 38 N. H. 81.

But one step prepared the way for another, and each legislature went a step beyond its predecessor, until, in 1866, in chapter 4268 of the acts of that year, which is embraced in General Statutes, chapter 209, section 20, the disqualification of interest is not only removed, but it is provided that in certain classes of cases the husband and wife are made competent witnesses for or against each other. An additional section was added in 1867,—section 22, of the same chapter,—providing that " the wife may testify for the husband, or the husband for the wife, in any case where it appears to the court that their examination as witnesses upon the points to which their testimony is offered would not lead to such violation of confidence" (meaning marital confidence). This section was amended by chapter 20, laws of 1870, so that the wife may testify for or against her husband, or the husband for or against his wife, in every case where it appears to the court that their examination as witnesses would not lead to such violation of (marital) confidence. This amendment was made to apply to pending

suits, and to take effect from its passage. So there can be no question of its applying to the present case.

In *State* v. *Moulton*, 48 N. H. 485, it was held that section 22, chapter 209, General Statutes, did not apply to criminal cases—following the cases of *State* v. *Flanders* and *State* v. *Connell*, 38 N. H. *supra.* But in the acts of 1869, chapter 23, respondents were allowed to testify; and by the act of 1871, chapter 38, the disqualification of infamy is removed, and the wife is made a competent witness in all criminal cases where the respondent is allowed to testify; and this act is applied to pending suits, and made to take effect from its passage. In criminal cases, then, it would seem that the wife is made a competent witness in all cases; for it is not in those cases where the husband, being respondent, requests or elects to testify, that she is made competent, but in all cases where he is *allowed* to testify,—which, by the act of 1869, is in all cases; and the wife being thus made a *competent* witness in all criminal cases, she may be called to testify for or against her husband in all cases where he is accused of crime.

Thus it appears that the present policy of our legislation on this subject is to make the husband and wife competent witnesses for or against each other, just as though they were strangers, in no way connected, except in the single case where the court can see that such testimony would lead to a violation of marital confidence. Applying that principle, and there would seem to be no good reason why the wife should not have testified in the case before us. They are to be allowed or compelled to testify for and against each other in all cases, just like persons in no way related to each other, with this single exception; and this violation of marital confidence must be something confided by one to the other, simply and specially as husband or wife, and not what would be communicated to any other person under the same circumstances.

In this case the wife acted as the husband's agent, and kept his money, and knew how it was expended; but all the communications made to her were made to her as such agent, just as he would have made the same communications to any other agent doing the same business. There was no confidential communication between them as husband and wife, but simply the ordinary communications between a principal and agent, and the communications would be no more confidential than those between any other principal and agent; and what she heard of the conversation between her husband and the deceased was not of course confidential, because it was talk between third persons, and not any communication made to her. We see no reason to set aside this verdict on this ground. Allowing the wife to testify for or against her husband, in any case where a stranger would have been a competent witness, seems to be the *rule* now; and, in that view of the case, nothing should be excluded except something that is strictly *confidential,* and not only so, but communicated in strict *marital* confidence. *Ryan* v. *Follansbee,* 47 N. H. 100.

We think the instructions, that, if such a contract as the defendant

claimed was made, the plaintiff could not recover, were well enough. The case of *Crawford* v. *Parsons*, 18 N. H. 293, is cited as opposed to this view, where it was held that when the plaintiff agreed to work for the defendant for eight months for a certain lot of land, this contract on the part of the defendant was within the statute of frauds, and could not be enforced, and that therefore the plaintiff was not bound by his contract, and might leave, as he did, after two weeks' work, and still recover what his services were worth, without waiting till the end of the eight months before he brought his action, and without being liable for any damages to the defendant for leaving before his time was out—according to the doctrine of *Britton* v. *Turner*, 6 N. H. 481.

But that authority does not apply here, because in this case the defendant was to give the plaintiff not only the farm, but also his *personal property*. So far as the personal property was concerned, the contract was not within the statute of frauds; and the fact that a part of the contract could not be enforced, so far as it related to the conveyance of real estate, did not vitiate the whole contract. If a part of the consideration is illegal, that may vitiate the whole contract; but where a part is void or voidable, as in this case, but not illegal, that does not taint the whole, or make void what would otherwise be valid.

But we think the doctrine of this case, thus cited, is questionable, especially as it is in direct conflict with the doctrine of *Lane* v. *Shackford*, 5 N. H. 130, where it is held that such a contract to convey land, though not in writing, and though no action can be maintained upon it, is not wholly void, so that the party purchasing the land cannot recover back money paid for the land, or pay for services rendered in payment therefor, until the vendor of the land has refused or disabled himself to execute his part of the contract.

This authority, which we understand to have been generally followed in this State, except in *Crawford* v. *Parsons*, would justify the ruling in this case on that point, even if the contract was to convey land only,—because, if the contract was as the defendant claimed, he could not properly be called on to perform it when the plaintiff left him; and his refusal to give a deed or other writings at that time would be no refusal to perform his contract. But, as the contract claimed by the defendant had reference to personal property as well as to real estate, the ruling on that point was right in either view of the law.

But we think the other part of the instructions was erroneous. It would be necessary to know what the expectation of the defendant was, as well as of the plaintiff, in order to settle the questions that might arise. The instructions do not meet the case made by the plaintiff, either in his opening statement or by the proof, as the plaintiff claimed it to be. He claimed, in the opening, that it was agreed between the parties " that the plaintiff should come on to the defendant's farm and take care of the defendant as long as he lived, and have his property, consisting of a farm and personal property; and that it was the understanding,"—or, in other words, that they agreed,—" that proper papers should be executed between them to carry this agreement into

effect; that the plaintiff accordingly went with his family and remained fifteen weeks, when, upon refusal by the deceased to make writings, he left." After the evidence was put in, then the case shows that the " plaintiff claimed that the evidence did not show any completed contract, but a verbal understanding" (or agreement), " which was to be carried into effect by the execution of writings that would secure the plaintiff the property in question."

Here, then, the plaintiff claimed that there was a contract between them, not only that he should live with and take care of the defendant for life, and have, as the consideration for so doing, the defendant's farm and property,—but there was also a further contract or agreement that this contract should be reduced to writing; that papers, in some form, should be executed between them, which should bind the parties legally to the fulfilment of that contract on each side. Now if this were the agreement, then the question should have been left to the jury as to whether the plaintiff waited a reasonable time for the defendant to perform the last part of the contract by putting the main contract in writing ; and if so, then whether the defendant refused to thus perform it in such reasonable time.

If there was such a major contract as the plaintiff alleged, and one which would not be binding unless reduced to writing, it certainly would be no more than reasonable, no more than would be expected among prudent and cautious men, that the other or minor agreement should also be made, that the major contract should be put in writing so as to show just what the contract was, and also to make it valid in law to bind the parties. And the law would not require the plaintiff to remain in uncertainty and to trust to an invalid contract longer than to give the defendant a reasonable time to make the writings which should obligate him to perform the major contract, or the first part of his agreement; and the law would not aid the defendant in compelling the plaintiff to work for him all his life under the major contract, which he would not be obliged to perform, only in part at least, until he had performed the minor contract, or precedent condition, by putting the whole contract in writing, which would make it a legal and binding contract.

If it had been left to the jury to find whether there was a contract, agreement, or understanding between these parties that the main contract was to be reduced to writing, and that the defendant unreasonably refused to perform that part of the contract upon request to do so, that then the plaintiff would be entitled to recover pay for what he had done, we think it would have been well enough. While the first part of the instructions was broad enough to cover the case as claimed by the defendant, the second part was not full enough to meet the case as claimed by the plaintiff. Under these instructions the plaintiff might have left at any time without requesting the defendant to do what the plaintiff claimed he had agreed to do, and yet have recovered, though the defendant might have been ready to make the writings according to agreement, if he had been requested so to do.

In such case the defendant might have been ready and willing to do all he agreed to do, and the case would stand as strong as the case of *Lane* v. *Shackford*, where it was held that the plaintiff could not recover back money paid on a contract for the sale of land till the defendant had refused or disabled himself to execute his part of the contract.

When the defendant thus refuses to perform his part of the contract, then the plaintiff may recover back money he has paid towards the land; and here, when the defendant had refused to perform his part of the contract, the plaintiff might recover pay for his services, equivalent to their value in money. *Ham* v. *Goodrich*, 37 N. H. 185; *Roundy* v. *Thatcher*, 49 N. H. 526; *Miller* v. *Tobie*, 41 N. H. 84.

*Verdict set aside.*