Belknap
No. 91-242

THE STATE OF NEW HAMPSHIRE

v.

KEVIN WILKINSON

September 1, 1992

*John P. Arnold*, attorney general (*Ward E. Scott*, attorney, on the brief and orally), for the State.

*Charles A. Russell*, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Kevin Wilkinson, was found guilty by a jury (*O'Neil*, J.) of violating RSA 264:25, conduct after an accident. On appeal, he contends that the search of the car involved in the accident was unlawful because the affidavit underlying the search warrant had insufficient indicia of reliability and contained material misrepresentations. Further, he argues that his wife was allowed to testify at his trial in contravention of the marital privilege. We affirm.

On May 29, 1989, at about 11:30 at night, a man was severely injured in a hit-and-run accident in front of the Meredith Station restaurant on Route 3 in Meredith. The investigation remained open until April 3, 1990, when the defendant's estranged wife called the Meredith police, gave her identity, and reported that her husband was involved in the accident and that the car he was driving at the time was parked in the garage at her home in Pembroke. She also called the Pembroke police and told them the same information anonymously. Based on the information, the Meredith police obtained a search warrant for the car. A jury convicted the defendant of violating RSA 264:25, which requires a person knowingly involved in such an accident as occurred here to stop, report it to the police, and share certain information with any person injured.

The defendant first contends that the fruits of the search of the automobile should be suppressed because the search violated his rights under part I, article 19 of the New Hampshire Constitution. He alleges that the affidavit supporting the warrant had insufficient indicia of reliability and contained material misrepresentations.

The law in New Hampshire on the use of informants in constructing affidavits to support a search warrant is by now clear.

"Part I, article 19 of the New Hampshire Constitution provides that search warrants shall issue only upon cause or foundation, supported by oath or affirmation. We interpret this language as a requirement for probable cause. . . . [T]his court adopted the totality-of-the-circumstances test for determining whether probable cause exists. Under this test, elements including the informant's veracity and basis of knowledge are important factors to be considered by judges and magistrates in determining whether probable cause exists. Other indicia of reliability, however, such as corroboration by police officers, may be used in determining the existence of probable cause to supply the missing factors relative to the informant and the informant's information."

*State v. Caicedo*, 135 N.H. 122, 125, 599 A.2d 895, 897 (1991) (quotations and citations omitted). "Probable cause to search exists if a [person] of ordinary caution would be justified in believing that what is sought will be found in the place to be searched." *State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975).

In this case there was a sufficient basis for finding that the defendant's wife had knowledge of the facts. The car belonged to her husband and was located in her garage. *See State v. Hazen*, 131 N.H. 196, 201, 552 A.2d 77, 80 (1988). Unlike *State v. Davis*, 133 N.H. 211, 575 A.2d 4 (1990), and *State v. Carroll*, 131 N.H. 179, 552 A.2d 69 (1988), where the informants were anonymous, the informant here revealed her identity and her relationship to the defendant. Although the application for the search warrant and its supporting affidavit did not precisely establish the fact of a statement from the defendant to his wife in which he implicated himself in the offense, the magistrate was, on the remaining facts, entitled to such a conclusion based upon circumstantial evidence from the wife's statement that she "wanted to clear her conscience." *See United States v. Badessa*, 752 F.2d 771, 774–75 (1st Cir. 1985).

There was also a sufficient basis for the veracity of the informant. "It is reasonable to infer the credibility of an informant

174

where he makes an admission against his own penal interest." *Hazen*, 131 N.H. at 201, 552 A.2d at 80. The defendant's wife's statements to the Meredith police concerning her knowledge of the incident involving her husband's car constituted an admission to a misdemeanor pursuant to RSA 642:3, I(d) ("A person is guilty of an offense if, with a purpose to hinder, prevent or delay the discovery, apprehension, prosecution, conviction or punishment of another for the commission of a crime, he . . . [c]onceals . . . physical evidence that might aid in the discovery, apprehension or conviction of such person . . . .").

█ Under even the most strict analysis this court has enunciated to assess the credibility of informants, *State v. Mandravelis*, 114 N.H. 634, 637, 325 A.2d 794, 796 (1974); *State v. Carroll*, 131 N.H. at 192, 552 A.2d at 77 (Batchelder, J., concurring), the affidavit here would be sufficient. Under *Carroll*'s totality-of-the-circumstances analysis, there is no doubt that the warrant was properly issued.

█ The defendant next argues that the affidavit supporting the warrant was flawed because it contained material misrepresentations made either intentionally or recklessly. *State v. McGann*, 128 N.H. 186, 188–89, 514 A.2d 1247, 1249 (1986). Omissions, as well as positive misstatements, can be construed as misrepresentations for purposes of an affidavit in certain cases. *See State v. Jaroma*, 128 N.H. 423, 426–27, 514 A.2d 1274, 1276 (1986). The materiality of an omission is a question of law which must be determined before the degree of the affiant's intent is considered. *Id.* at 426, 514 A.2d at 1276; *see State v. Spero*, 117 N.H. 199, 205, 371 A.2d 1155, 1158 (1977). Materiality is determined by whether, if the omitted statements were included, there would still be probable cause. *State v. Valenzuela*, 130 N.H. 175, 191, 536 A.2d 1252, 1262–63 (1987) (an omission is material if it is "necessary for the finding of probable cause"), *cert. denied*, 483 U.S. 1008 (1988); *see State v. Chaisson*, 125 N.H. 810, 814, 486 A.2d 297, 300 (1984); *State v. Renfrew*, 122 N.H. 308, 311, 444 A.2d 527, 529 (1982).

█ The defendant alleges that there are three sets of facts which constitute material omissions. The first is that the couple's marriage was not stable and that the affiant did not apprise the issuing judge of the possible motive of vindictiveness in informing the authorities of her husband's conduct. However, "'where an informant contacts authorities with a motivation other than "a sense of civic duty" the informant can still be found credible.'" *Jaroma*, 128 N.H. at 426, 514

A.2d at 1276 (quoting *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert. denied*, 449 U.S. 824 (1980)). Here, regardless of her motives, Valerie Wilkinson's credibility was sufficiently established.

■ Second, the defendant claims that the affiant's failure to include the fact that the informant's phone call to the Pembroke police was anonymous was a material omission. However, there is no indication that the informant provided additional information to the Pembroke police that the Meredith police did not have from her as a named source. Thus, we can presume that the search warrant was procured using information from a known source, and that the call to the Pembroke police was, for the purposes of the warrant, irrelevant.

■ Finally, the defendant claims that the affiant's failure to include in the affidavit several witnesses' varying descriptions of the car constitutes a material omission. The affidavit stated that "[o]ne witness described the vehicle as a dark possibly blue vehicle. He said it looked like a full sized 1978–79 Ford LTD type vehicle." The police log stated, however, that the car was white, and the police issued an all-points-bulletin for a white car. Additionally, the witnesses stated variously that the car was an "older and large white type car"; a "dark colored possibly black, 4 door"; an "older full size 2 tone blue vehicle possibly Ford"; a "possibly dark, possibly blue vehicle"; and light green or dark green. In fact, the car was a 1978 two-door metallic green Ford Thunderbird with a white vinyl roof. More importantly, however, we have already concluded that the magistrate could have properly inferred that the wife's basis of knowledge was the defendant himself, thereby rendering the omission of the differing descriptions irrelevant.

The defendant's second issue on appeal is the admission of his wife's testimony at trial. The defendant's wife, Valerie Wilkinson, was home in Meredith on the evening of the hit-and-run incident. Although she tried to stop him from going out because he had been drinking, the defendant left in their 1978 Ford Thunderbird, which he regularly drove. He returned momentarily to collect his forgotten cigarettes, but left again. He returned in a few minutes very upset, but told his wife that he "hadn't been gone long enough for anything to have happened." Suspecting more, she pressed him, and he admitted that he had hit something near Hart's Turkey Farm, which she testified is "just a little bit up the road from Meredith Station." Together they went into the garage to look at the car and noticed a dent on the right side above the headlight. The Wilkinsons then ceased using the car. The defendant took off the white top, covered the car,

and left it in the driveway. Later, Valerie drove the car to their new residence in Pembroke, where it remained in the driveway.

The couple subsequently separated, and the defendant moved out. Valerie Wilkinson's lessor complained about the car in the driveway, and in April 1990 the defendant arranged with a friend to move it. The friend testified that the defendant told him that the car had been involved in a hit-and-run incident probably involving a pedestrian, that the dent in the hood was the point of contact, that the accident had occurred about a year earlier, that the defendant had told his wife about the incident on the night it occurred, and that these were matters that should be kept confidential. Another witness overheard enough of the conversation between the defendant and his friend to be aware that the car was involved in something significant.

The court held a pretrial hearing on the defendant's motion *in limine* seeking to bar his wife's testimony. At the time of the motion hearing, the State did not present evidence that the defendant had revealed facts of his involvement in the Meredith incident to his friend or that there was a witness to that conversation. With no knowledge of the defendant's communication of the privileged matter to others, the superior court granted the defendant's motion *in limine* excluding Ms. Wilkinson's testimony of what the defendant had told her, on the ground that it was a privileged communication. In its written order, the court said:

> "[T]here is no evidence that Mr. Wilkinson made mention of the hit-and-run to any other person, which would, under New Hampshire law, have operated as a waiver of the privilege and which would have resulted in the ability of Ms. Wilkinson to testify, inasmuch as there would have been, in such a case, no marital confidence."

At trial, however, the prosecution called the defendant's friend and the second witness. After their testimony, at a bench conference, the State sought admission of the wife's testimony and asked the court to reconsider its decision on the defendant's motion *in limine*. Over the defendant's objection, the court ruled from the bench that:

> "[T]he Motion that I had before me was whether or not she could testify. Having in mind the facts and circumstances that were related to me at the time, I wasn't aware through any testimony or through any pleading that he had told anybody else. Had I known that at the time I did my opinion, I probably would have stated the status of the law that it's revealed to somebody else and that person may waive it.

That doesn't differ substantially from the defendant making the statement to his wife in the presence of a third party. Clearly, that's waived because the purpose of this is not to be divulged to anybody. It's made in marital confidence.

This may have been intended to be made in marital confidence in the very first instance . . . , [but] once he divulges that to the public he takes away that which he intended to preserve, a marital communication. So as far as my ruling is concerned, it's modified to the extent that he's waived it, and she's entitled to testify, both as to what she saw and what she heard him say."

■■ The defendant appeals this decision on three grounds. He first argues that the court was precluded from reconsidering its decision on the defendant's motion *in limine* because of principles of *res judicata* and law of the case. New Hampshire law has long granted the superior court jurisdiction over a matter until its final judgment. *Redlon Co. v. Corporation*, 91 N.H. 502, 503, 23 A.2d 370, 372 (1941). Thus, interlocutory rulings may be reconsidered at the discretion of the same or another judge of the superior court. *Id.*

Second, he argues that his wife's testimony was barred by the marital privilege, which provides that:

"Husband and wife are competent witnesses for or against each other in all cases, civil and criminal, except that unless otherwise specifically provided, neither shall be allowed to testify against the other as to any statement, conversation, letter or other communication made to the other or to another person, nor shall either be allowed in any case to testify as to any matter which in the opinion of the court would lead to a violation of marital confidence."

N.H. R. Ev. 504; *see* RSA 516:27.

■■ The marital privilege is not a blanket immunity, *Corson v. Murinane*, 51 N.H. 92 (1871) (note); rather, it is a privilege protecting marital confidences, *Clements v. Marston*, 52 N.H. 31, 38 (1872). Read literally, as the defendant urges, there are two prongs of the privilege. *See* McNamara, *The Hierarchy of Evidentiary Privilege in New Hampshire*, 20 N.H.B.J. 1, 6 (1978). The first prong appears to leave the court little discretion, excluding "any statement, conversation, letter or other communication made to the other [spouse] or to another person." N.H. R. Ev. 504. The second prong goes beyond matters in which one of the spouses is a party,

and beyond marital communications; it gives the judge discretion to exclude a spouse's testimony concerning "any matter which in the opinion of the court would lead to a violation of marital confidence." *Id.* However, in *Clements* this court folded both prongs into one, requiring a finding of a "violation of marital confidence" before the court can exclude a spouse's testimony. 52 N.H. at 38. The New Hampshire legislature has had 120 years to overturn *Clements*, but has not. New Hampshire Rule of Evidence 504 is identical in all material respects to the statute construed in *Clements*. *Stare decisis* compels us to let current law stand. *Cf. Bolduc v. Marcalus Mfg. Co.*, 96 N.H. 235, 238, 73 A.2d 115, 117–18 (1950).

The court below found that at the outset the communication was privileged because the defendant intended a marital confidence, but that the privilege was later waived. In this State, "[a] person claiming a privilege against disclosure waives the privilege if the person . . . knowingly and voluntarily discloses . . . any significant part of the privileged matter." N.H. R. Ev. 510. The defendant contends that the court should have held an evidentiary hearing on whether the privilege was waived. However, because the defendant did not ask for a hearing during the bench conference, the issue was not preserved for review. *State v. McAdams*, 134 N.H. 445, 448–49, 594 A.2d 1273, 1275 (1991). Moreover, the court had ample evidence before it to make the determination of waiver.

*Affirmed.*

All concurred.