**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case Nos. 2019-0130 and 2020-0331, <u>State of New Hampshire v. Pamela Mansulla</u>, the court on August 25, 2022, issued the following order:**

Having considered the briefs and oral arguments of the parties and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. In these consolidated appeals, the defendant, Pamela Mansulla, appeals her convictions following a bench trial in the circuit court on 13 misdemeanor counts of animal cruelty and the trial court's post-conviction denial of her motion to amend her sentences. In her direct appeal of her convictions, the defendant argues that the Circuit Court (<u>Desjardins</u>, J.) erred by denying her pretrial motion to suppress all evidence obtained as a result of a warrant to seize her dog, Carmella, and to search her home and other animals for evidence of animal neglect. In her discretionary appeal, she asserts that the Circuit Court (<u>Greenhalgh</u>, J.) erred by denying her motion to amend her sentences by removing or modifying the condition that she may "own only one cat or dog, at any one time, for the rest of her life." We affirm the defendant's convictions, but vacate the challenged condition of her sentences and remand for further proceedings consistent with this order.

I. Defendant's Appeal of Her Convictions

 A. Facts Related to Motion to Suppress

The following facts are derived from the affidavit submitted in support of the warrant application. In September 2016, the defendant reported to the local police that S.B. was neglecting her pit bull, Carmella. The defendant told the police that she had originally obtained Carmella to breed her, but had subsequently rehomed her to D.B., who, five weeks later, gave her to S.B. The officer observed Carmella at S.B.'s home and saw that the dog was underweight and had irritated skin, hair loss, eye mucus, and a "very strong odor." S.B. told the investigating officer that the defendant had neglected Carmella. D.B. similarly told the officer that the defendant had neglected Carmella, stating that, upon acquiring her, the dog "was covered in urine and feces," her skin was scalded by urine, she was very thin, and "her nails were so long they looked like macaroni noodles." S.B. later told the officer that she and the defendant were working together to see to the dog's veterinary needs. However, from September 2016 to January 2017, the police received complaints from the defendant and S.B., each accusing the other of neglecting Carmella.

In January 2017, the defendant reported to the investigating officer that she had received Carmella from S.B. a month before and that the dog was "in really bad shape." The officer attempted to arrange a date and time to see Carmella and the defendant's other dogs, having learned that the defendant regularly bred between 10 and 12 pit bulls at her home. On more than one occasion, the defendant arranged a date and time for the officer to inspect the dogs, but "[w]hen the day came to actually see them, she wouldn't answer the door or phone calls."

On March 1, the defendant agreed that the officer could come by her residence, but then would not allow the officer into her home. While on the defendant's front porch, the officer noticed a "strong odor of urine and feces," which became "very intense" when the defendant opened the front door. The officer and the defendant spoke for several minutes, during which the defendant became "argumentative at times." Eventually, the defendant brought Carmella onto the porch for the officer to inspect. The officer observed that Carmella appeared noticeably less alert than she had appeared in 2016. She also observed "a large area of weeping skin on [Carmella's] upper front shoulder area" and several patches of missing fur. The defendant provided the officer with a written statement that was in a plastic bag to protect it from the rain. When the officer opened the bag at the police station, the paper smelled strongly of urine and feces.

Also in March, the officer obtained a written statement from S.B. about the conditions in the defendant's home. S.B. said the smell inside was very bad and that she had "witnessed [the defendant] dump a bucket of floor cleaner and water on a plywood floor to clean up urine." S.B. explained that "it was never wiped up so everythin[g] would seep into the floor." A state employee, who entered the home in March in connection with an unrelated matter, also informed the officer that there was an intense smell inside the residence.

On March 22, the officer was informed that the defendant had offered to sell Carmella to an animal rescue league. On March 24, Carmella's veterinarian informed the officer that the defendant intended to rehome Carmella. On March 25, the officer learned that Carmella had been to the veterinary office that morning with the defendant, and was observed to be thin and have scabs, missing fur, very long nails, and very red eyes. The veterinarian refused to provide the defendant with a health certificate for Carmella. The defendant left the office momentarily and then returned, screaming at staff, and saying that she did not need a health certificate in order to rehome Carmella. Based upon all of the above information, the officer obtained a warrant on March 25 to seize Carmella and search the defendant's home and other animals for evidence of animal neglect.

2

B.  Appellate Arguments

The defendant argues under the State and Federal Constitutions that the trial court erred in denying her motion to suppress.  We first address her claim under the State Constitution and rely upon federal law only to aid in our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the New Hampshire Constitution requires search warrants to be supported by probable cause.  State v. Page, 172 N.H. 46, 50 (2019).  Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction.  Id.  The police must demonstrate in an application for a search warrant that there is a substantial likelihood that the items sought will be found in the place searched.  Id.  The affiant need not establish with certainty, or even beyond a reasonable doubt, that contraband or evidence of a crime will be found in a particular place.  Id.

Because the trial court in this case made no factual findings, we review de novo its decision to uphold the magistrate's probable cause determination.  See State v. Ball, 164 N.H. 204, 207-08 (2012).  We assign great deference to the magistrate's determination of probable cause, and do not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense.  Page, 172 N.H. at 50.  Our task as the reviewing court is to examine whether, given all the circumstances set forth in the affidavit, the magistrate had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant.  Id.  We apply a totality-of-the-circumstances test to review the sufficiency of an affidavit submitted with a warrant application.  Id. We interpret such supporting affidavits realistically and with common sense, and we determine close cases by the preference to be accorded to warrants.  Id.

The defendant first argues that the affidavit failed to provide the magistrate with probable cause to believe that her residence contained evidence of a crime, specifically, animal cruelty.  See RSA 644:8, III(a), (f) (2016) (providing that the crime of animal cruelty includes negligently depriving or causing to be deprived an animal in the defendant's possession or custody of "necessary care, sustenance or shelter," and negligently permitting or causing an animal in the defendant's possession or custody "to be subjected to cruelty, inhumane treatment or unnecessary suffering of any kind").  She contends that: (1) the affidavit established only that Carmella had "chronic medical issues that persisted over several months and through several owners"; (2) "issues related to the care given to the dog seemed to improve upon [the defendant] regaining custody"; (3) the state worker who visited her home in connection with the other matter "made no observations of dirty or unsanitary living conditions" or of any animal being treated inhumanely; (4) there was

evidence that Carmella "was kept in an unclean condition . . . when [S.B.] likely had custody"; and (5) "[n]o animal medical personnel indicated a concern over [the defendant's] potential neglect of Carmella" or any other animal.

However, for the affidavit to be sufficient, it did not have to establish, with certainty, or even beyond a reasonable doubt, that evidence of a crime (here, animal cruelty) would be found in the defendant's home.  See Page, 172 N.H. at 50.  Rather, the affidavit had only to establish "a substantial likelihood" that such evidence would be found.  Id.  Drawing all reasonable inferences from the totality of the circumstances alleged in the affidavit and in light of the deference accorded to the magistrate's probable cause determination, we conclude that the affidavit provided the magistrate with probable cause to believe that the defendant's home contained evidence of animal cruelty.

Alternatively, the defendant asserts, "Even if the warrant . . . established probable cause to believe evidence of animal neglect would be found in [her] home, it did so only on the basis of material omissions," which were deliberately or recklessly made.  She contends, therefore, that the trial court should have suppressed all evidence derived from the warrant.  We disagree.

"[A] facially sufficient but misrepresentative affidavit cannot be the basis for a search warrant . . . ."  State v. Spero, 117 N.H. 199, 204 (1977).  To suppress evidence seized under such an affidavit, the defendant must show that the misrepresentations were material and that they were "made intentionally or recklessly."  Id. at 205.  Omissions can be construed as misrepresentations.  State v. Wilkinson, 136 N.H. 170, 174 (1992).  "Materiality is determined by whether, if the omitted statements were included, there would still be probable cause."  State v. Gubitosi, 151 N.H. 764, 768 (2005).  Thus, "[a]n omission is material if it is necessary for the finding of probable cause." Id.  "We will not overturn the trial court's finding on this question unless it is unreasonable or unsupported by the evidence."  Id.

The defendant contends that the affidavit omitted information showing that: (1) veterinarians did not suspect that she neglected Carmella; (2) Carmella was being treated for health conditions; (3) Carmella lost weight in S.B.'s care and gained weight in the defendant's care; and (4) the precise date on which the defendant regained custody of Carmella was December 4, 2016.  Based upon our review of the record submitted on appeal, we conclude as a matter of law that these alleged omissions in the search warrant application were not material.  See Wilkinson, 136 N.H. at 174.

Because the Federal Constitution affords no greater protection to the defendant than the State Constitution under these circumstances, see State v. Fish, 142 N.H. 524, 527-28 (1997); Illinois v. Gates, 462 U.S. 213, 238-39

(1983), we necessarily reach the same conclusion under the Federal Constitution as we do under the State Constitution.  See State v. Ward, 163 N.H. 156, 163 (2012).

## II.  Defendant's Appeal of Condition of Sentences

### A.  Pertinent Facts

The defendant was sentenced in 2019 based upon her 2018 convictions. The trial court sentenced the defendant to suspended fines on some of the charges and 12 months in the house of corrections with all but 60 days suspended for two years on the remaining charges.  As a condition of each sentence, the defendant was prohibited from owning, selling, breeding, residing with or possessing any dog or cat for two years.  At the expiration of the two-year period, the defendant was permitted, "for the rest of her life," to own "only one cat or dog, at any one time," which had to "be spayed or neutered."

In March 2020, the State filed an assented-to motion to amend certain of the defendant's sentences.  At the defendant's request, the State included in its motion the defendant's assertion that "she should not be limited to owning only one cat or dog at any time for the rest of her life."  The State took no position on this assertion.  Although, technically, the motion to amend was the State's motion, we treat the defendant's assertion embedded therein as her own motion to amend.

The trial court held a hearing in June at which the State and the defendant appeared with counsel.  Defense counsel argued that the two-year prohibition was sufficient punishment, and asked that the lifetime restriction be either stricken or modified.  The trial court denied the defendant's motion. The defendant filed a motion to reconsider, which the court denied.

### B.  Appellate Arguments

We review the trial court's sentencing decision under our unsustainable exercise of discretion standard.  State v. Lambert, 147 N.H. 295, 296 (2001). To prevail under that standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of her case.  See id.  "In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made."  State v. Roy, 174 N.H. 622, 627 (2021) (quotation omitted).  "Our task is not to determine whether we would have found differently, but is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it."  Id. (quotation omitted).

Before 2019, RSA 644:8, IV(a) provided, in pertinent part, that any person charged with cruelty to animals may have his or her animals confiscated by the arresting officer and, upon said person's conviction of cruelty to animals, the court may dispose of said animal in any manner it decides. . . . In addition, the court may prohibit any person convicted of animal cruelty from having future ownership or custody of other animals for any period of time the court deems reasonable or impose any other reasonable restrictions on the person's future ownership or custody of animals as necessary for the protection of the animals.

RSA 644:8, IV(a) (2016) (repealed and reenacted 2019). In 2019, RSA 644:8, IV was repealed and reenacted, and the revised text became effective January 1, 2020, a few months before the defendant moved to amend her sentence and approximately six months before the trial court denied her motion. See Laws 2019, 306:10. As amended, RSA 644:8, IV now differentiates between misdemeanor and felony sentences and makes felony sentences more severe than misdemeanor sentences. See id. We need not decide whether the revised version of RSA 644:8, IV applies here because the defendant has only misdemeanor convictions and the statutory language governing sentencing for those convictions is substantially the same under both the revised and the original versions of the statute.

On appeal, the defendant argues that because the trial court required that any dog or cat she owns in the future be spayed or neutered and because spayed and neutered animals cannot breed, limiting her to only one dog or cat at any one time is unreasonable. The defendant also asserts that "[a] lifetime limit on [dog and cat] ownership is . . . unnecessarily long" and suggests that the court could have "accommodated [its] concerns" by imposing a different restriction. We agree.

There is no objective basis in the record to support the trial court's decision to limit the defendant to owning no more than one cat or one dog, provided every cat or dog she owns in the future is either spayed or neutered. At the hearing on the defendant's motion to amend, the trial court conceded that "[t]he reason . . . [it] imposed [the lifetime] restriction is not so much that [the court believed] the ownership of one or two dogs is necessarily harmful to the dogs or the cats specifically." Rather, the court explained, its concern was "that by owning more than a single animal, animals could breed and then that results in all of a sudden two animals becoming six animals or more."

With the trial court having allowed the defendant to own only spayed or neutered cats and dogs in the future, we conclude that limiting her to owning one dog or one cat at a time is not a "reasonable restriction[]" that is "necessary for the protection of the animals." RSA 644:8, IV(a). Nor is it reasonable to

6

extend this restriction for the rest of the defendant's life given her relative youth and the fact that she has been convicted of only misdemeanor offenses.

Because the defendant has demonstrated that the lifetime restriction, both as to its length and the number of dogs and cats she may own in the future, is clearly unreasonable to the prejudice of her case, we conclude that the trial court unsustainably exercised its discretion by denying her motion to strike or modify that condition. See Lambert, 147 N.H. at 296. Therefore, we vacate this condition of the defendant's sentences and remand for further proceedings consistent with this order. Any issue that the defendant raised in her notice of appeal but did not brief is deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed in part; vacated in part; and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

7