NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
Case No. 2024-0054
Citation: State v. Bradley, 2025 N.H. 17

THE STATE OF NEW HAMPSHIRE

v.

DEBORAH ANN BRADLEY

Argued: February 13, 2025
Opinion Issued: April 16, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Mary A. Triick, senior assistant attorney general, on the brief and orally), for the State.

Lothstein Guerriero, PLLC, of Concord (Theodore M. Lothstein on the brief and orally), for the defendant.

DONOVAN, J.

[¶1] In this interlocutory appeal, the defendant, Deborah Ann Bradley, challenges an order of the Superior Court (Ignatius, J.) denying her motion to exclude an audio recording of a conversation between her and her husband, Kenneth Bradley. She argues that the trial court erred by concluding that New

Hampshire Rule of Evidence 504 does not bar the audio recording from being introduced at trial. We conclude that the spousal privilege, N.H. R. Ev. 504, precludes a spouse's testimony about confidential marital communications, but it does not mandate that the communications themselves be excluded. Accordingly, we affirm and remand.

## I.    Facts

[¶2] We accept the statement of the case and facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See State v. Hess Corp., 159 N.H. 256, 258 (2009). In August 2019, law enforcement began investigating a referral from the New Hampshire Division for Children, Youth and Families regarding the Bradley family. At the time, the defendant and Mr. Bradley lived with one of the defendant's biological children, four adopted children, and two foster children. During a safety check, one of the children reported that a second child had shown her a video recording of Mr. Bradley engaging in inappropriate behavior with a third child. While executing a search warrant at the Bradleys' home, law enforcement seized the second child's cell phone and iPad.

[¶3] A search of the devices revealed that the cell phone's contents had been erased but that the iPad contained an audio recording of a conversation between the defendant and Mr. Bradley from August 15. The recording, which is approximately 90 minutes in length, documents, among other things, a meeting between the defendant, Mr. Bradley and his attorney. When the defendant arrived at the attorney's office, the attorney asked that the defendant turn her cell phone "completely off," informed the defendant and Mr. Bradley that "if you talk . . . in the marital context, it's privileged," and left the room to allow the Bradleys to speak in private. A substantial portion of the Bradleys' private conversation was recorded on the iPad. However, the contents of the recording do not indicate how it was initiated or stopped.

[¶4] During an October 2021 interview at the Child Advocacy Center, the child whose devices were seized by law enforcement disclosed that in 2019, she witnessed Mr. Bradley behaving inappropriately with another child in the home. She told the interviewer that she recorded a video of Mr. Bradley's conduct on her cell phone and an audio recording of the interaction on her iPad. The child reported that when she brought the cell phone to the defendant to discuss Mr. Bradley's conduct, the defendant said, "I'm going to talk to your dad about this, and I'll ask him about it. I think he'll be very disappointed to hear that you think this way about him." The child also stated that in August 2019, she discovered that the contents of her cell phone had been erased. She told the interviewer that the defendant explained to her that Mr. Bradley "was very upset. He didn't mean it. He just erased it because he was very frustrated that you think that way about him."

2

[¶5] In November 2022, the defendant was charged with accomplice to falsifying physical evidence and conspiracy to commit falsifying physical evidence. Thereafter, she moved to exclude the August 15 audio recording of her conversation with Mr. Bradley, arguing, among other things, that "marital privilege applies to the contents of the recorded conversation" and that "any testimony about the communication made between [herself and Mr. Bradley] would violate their marital privilege."

[¶6] Following a hearing, the trial court issued an order denying the defendant's motion. The trial court concluded that "the marital communications privilege does not apply to the Bradleys' recorded conversation and thus the recording is admissible at trial." The trial court reasoned that the Bradleys' conversation was, for public policy reasons, "not the type of communications New Hampshire Rule of Evidence 504 seeks to protect" and that the rule "does not bar the introduction of the recording or testimony about it."

[¶7] In June 2023, the defendant was further indicted on one count of accomplice to falsifying physical evidence, see RSA 641:6, I (2016); RSA 626:8, III (2016), and three counts of tampering with witnesses and informants, see RSA 641:5 (2016). After obtaining the June 2023 indictments, the State nolle prossed the November 2022 charges. This interlocutory appeal followed.

II.     Analysis

[¶8] The defendant argues on appeal that the trial court erred in determining that the spousal privilege does not preclude the introduction of the audio recording of the conversation between herself and Mr. Bradley at trial. The State asserts, among other arguments, that the spousal privilege in Rule 504 applies only to prevent the introduction of testimony but does not apply to other types of evidence. We agree with the State.

[¶9] New Hampshire courts have long recognized that certain confidential communications between spouses are privileged. At common law, "wives were not allowed to testify for or against their husbands" based upon the belief that "it was not expedient to place husband and wife in a position that might lead to dissensions and strife between them, or that might encourage perjury." Clements v. Marston, 52 N.H. 31, 36 (1872). In Clements, this court departed from the common law rule and explained the modern policy that spouses should be permitted to testify against each other, except with regard to confidential marital communications:

> [I]t appears that the present policy of our legislation on this subject is to make the husband and wife competent witnesses for or against each other . . . . They are to be allowed or compelled to testify for and against each other in all cases, just like persons in

no way related to each other, with this single exception; and this violation of marital confidence must be something confided by one to the other, simply and specially as husband or wife, and not what would be communicated to any other person under the same circumstances.

. . . .

Allowing the wife to testify for or against her husband, in any case where a stranger would have been a competent witness, seems to be the <u>rule</u> now; and, in that view of the case, nothing should be excluded except something that is strictly <u>confidential</u>, and not only so but communicated in strict <u>marital</u> confidence.

<u>Id</u>. at 38.

[¶10] Our pronouncement of the spousal privilege in <u>Clements</u> has remained essentially unaltered. The New Hampshire legislature has had more than 150 years to overturn <u>Clements</u>, but it has not done so. See <u>State v. Wilkinson</u>, 136 N.H. 170, 178 (1992). "New Hampshire Rule of Evidence 504 is identical in all material respects to the statute construed in <u>Clements</u>." <u>Id</u>.[1] Rule 504 provides:

Individuals who are married are competent witnesses for or against each other in all cases, civil and criminal, except that unless otherwise specifically provided, neither shall be allowed to testify against the other as to any statement, conversation, letter or other communication made to the other or to another person, nor shall either be allowed in any case to testify as to any matter which in the opinion of the Court would lead to a violation of marital confidence.

<u>N.H. R. Ev.</u> 504.

[¶11] The question in this case is not whether the Rule 504 spousal privilege precludes either of the Bradleys from testifying about their recorded conversation at trial. Rather, it is whether the spousal privilege applies to preclude the introduction of the audio recording itself.

[¶12] Generally, the determination of whether the spousal privilege applies is "intensely factual and rests within the sound discretion of the trial court." <u>State v. Pelletier</u>, 149 N.H. 243, 247 (2003). However, we review the

---

[1] The name of the privilege found in New Hampshire Rule of Evidence 504 was changed from "Husband and Wife Privilege" to "Spousal Privilege" in 2023. See <u>N.H. R. Ev.</u> 504. The text of the rule is otherwise substantially the same.

4

trial court's interpretation of the rules of evidence <u>de</u> <u>novo</u>. <u>State v. Paul</u>, 176 N.H. 262, 265 (2023). "It is well settled that statutory privileges should be strictly construed." <u>State v. Willis</u>, 165 N.H. 206, 212 (2013). When interpreting a rule of evidence or a statute, we will first look to the plain meaning of the words used and ascribe those meanings to them where possible. <u>Paul</u>, 176 N.H. at 265. We will not add words to the plain language of a rule. <u>Id</u>.

[¶13] By its plain language, the spousal privilege in Rule 504 precludes only testimony about confidential marital communications. <u>See</u> <u>State v. Kiewert</u>, 135 N.H. 338, 344 (1992) (spousal privilege "only operates to exclude testimony at trial"). Rule 504 plainly states that neither spouse may "<u>testify</u> against the other as to any statement, conversation, letter or other communication made to the other or to another person, nor shall either be allowed . . . to <u>testify</u> as to any matter which in the opinion of the Court would lead to a violation of marital confidence." <u>N.H. R. Ev.</u> 504 (emphases added). Rule 504's repeated use of the words "to testify" narrows the spousal privilege's scope to preclude only testimony by one spouse about confidential marital communications. The rule does not preclude the introduction of marital communications by other means. <u>See</u> <u>id</u>. To interpret Rule 504 as prohibiting the introduction of all evidence relating to the confidential marital communications would expand the privilege's scope and add words to the plain language of the rule. <u>See</u> <u>id</u>.

[¶14] Although the defendant concedes that, read literally, the Rule 504 spousal privilege applies only to testimony, she maintains that this court has never "taken the terms of the rule literally." She argues that the language used in <u>Clements</u>, mirrored by Rule 504, is a "vestige of the historical origin of this privilege." In her view, Rule 504 should be broadly construed, applying to communications the disclosure of which would violate the "marital confidence" as well as to all evidence regarding those communications. We are not persuaded.

[¶15] In <u>Wilkinson</u>, we explained that the spousal privilege "is a privilege protecting marital confidences" and that <u>Clements</u> stands for the proposition that a court must find "a violation of marital confidence before [it] can exclude a spouse's testimony." <u>Wilkinson</u>, 136 N.H. at 177-78. However, the issue in that case was whether the trial court erred by admitting the defendant's wife's testimony at trial based upon the finding that the privilege was waived. <u>See</u> <u>id</u>. at 175-78. We do not read <u>Wilkinson</u> as expanding the Rule 504 spousal privilege to exclude marital communications separate from a spouse's testimony.

[¶16] We agree with the State that the plain language and historical background of Rule 504 demonstrate that the spousal privilege "does not apply to prevent the introduction of evidence other than testimony." Here, the trial

court correctly determined that "the marital communications privilege does not apply to the Bradleys' recorded conversation and thus the recording is admissible at trial against Ms. Bradley."

[¶17] Our conclusion is supported by the reasoning of other state courts that have interpreted analogous spousal privilege rules. See, e.g., State v. Livingston, 665 S.W.3d 363, 371 (Mo. Ct. App. 2023) ("[T]he recording was not offered as Wife's testimony, and therefore was not testimonial, and did not implicate § 546.260 (prohibiting spouse from 'testifying').");  State v. Perez, 920 N.E.2d 104, 125, 127 (Ohio 2009) ("Because the jailhouse conversations were not introduced by way of [the defendant's wife's] testimony, we hold that their admission did not violate R.C. 2945.42.").  Nonetheless, the defendant argues that "if this Court agree[s] that the circumstances present in this case should not fall under the marital privilege, it should make its ruling prospective only." She contends that "claims of privilege invoke a very weighty reliance interest that would render it fundamentally unfair if judicial changes in the scope of a privilege were applied retroactively."  However, our decision, which is based upon the plain language of Rule 504, does not, as the defendant claims, alter the scope of the privilege.  We therefore decline to make our decision apply prospectively only.

[¶18] Based upon the foregoing conclusion, we need not address the State's remaining arguments regarding whether the audio recording falls within an exception to the spousal privilege for public policy reasons or because the Bradleys' conversation allegedly constitutes the discussion of ongoing criminal conduct.  See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address parties' other arguments when holding on one issue was dispositive).  We affirm the trial court's order denying the defendant's motion to exclude the August 15 audio recording and remand.

Affirmed and remanded.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.

6