365 S.E.2d 46

**STATE of West Virginia**

v.

**Stevie Wayne BAILEY.**

No. 17248.

Supreme Court of Appeals of
West Virginia.

July 16, 1987.

Rehearing Denied Feb. 3, 1988.

David Johnson, Asst. Atty. Gen., for appellant.

E. Joseph Buffa, Jr., Charleston, for appellee.

BROTHERTON, Justice:

Stevie Wayne Bailey appeals from a jury verdict in the Circuit Court of Wyoming County, which found him guilty of first degree murder without a recommendation of mercy. Bailey assigns as error (1) the admission of a statement given to the police by Bailey's spouse; and (2) the trial court's failure to remove a prospective juror for cause. We find no error and affirm the conviction.

During the afternoon of February 13, 1985, Stevie Wayne Bailey shot and killed Dan Holcomb, outside Holcomb's residence in Glen Rogers in Wyoming County. Bailey and Holcomb had met in 1982 and become friends. Bailey acted as Holcomb's chauffeur and spent time at the Holcomb residence. A romantic relationship developed between Bailey and Holcomb's wife, Kathy. Holcomb apparently was aware of the relationship, but took no action. In October, 1984, Bailey, Kathy Holcomb, and the two Holcomb children left for Webster County, West Virginia, and moved in with Kathy Holcomb's mother.

Later a reconciliation took place between Holcomb and his wife. On February 10, 1985, the wife and children returned to Glen Rogers and moved back in with her husband. Bailey also returned to Wyoming County, and on February 11, 1985, went to the Holcomb residence and spoke with Holcomb's wife. Two days later, allegedly after several hours of drinking beer and consuming valium, Bailey arrived at the Holcomb residence carrying a rifle. Holcomb went outside to meet Bailey and a scuffle ensued. The physically larger Holcomb easily defeated Bailey. When the fighting ended, Holcomb ordered Bailey off his property. Holcomb then picked up the gun and handed it to Bailey. Bailey turned and began to walk away. But, as Bailey was walking away, Holcomb shouted a derogatory comment at him. Bailey turned and fired three shots into Holcomb, killing him.

Bailey then travelled by foot to the residence of David and Kathy Evans. When Bailey arrived at the Evans' home with the gun, he told David and Kathy that he had shot Holcomb and asked Kathy to call the police and inform them that they could pick him up at the Evans' residence. Subsequently, members of the Wyoming County Sheriff's Department arrived at the Evans residence and arrested Bailey. Less than one week before Bailey's trial for the murder of Dan Holcomb, Bailey and Holcomb's widow were married.

I.

Bailey asserts as error the admission of a statement given to the police by Kathy Holcomb on the evening of the murder.

On February 13, 1985, after the shooting death of her husband, Kathy Holcomb gave a four-page statement to Wyoming County Deputy Sheriff Bill Buzzo containing her account of Holcomb's murder and of the

events that preceded the murder. In her statement, she indicated that on the night of February 11, 1985, Bailey came to the Holcomb residence and pounded on the window wanting Kathy to let him inside the house. She stated that "he pointed a gun to me and said 'if you don't let me in—I'm going to shoot Dan.' "

Five days before Bailey's trial, on August 30, 1985, the State served notice of its intent to offer into evidence the prior recorded statement of Kathy Holcomb. Bailey filed a motion in limine to suppress the statement. The court withheld ruling on Bailey's motion in limine but instructed the prosecutor not to refer to the wife's statement in his opening statement.

■ At trial, Bailey prevented Kathy Holcomb, now Kathy Holcomb Bailey, from testifying by invoking the privilege against adverse spousal testimony.[1] The State nevertheless requested that Kathy Holcomb's statement be admitted under West Virginia Rules of Evidence 803(24) and 804(a)(1). The State offered the statement as probative on the issue of premeditation, deliberation, and malice. The trial court overruled Bailey's motion in limine. The deputy who took the statement introduced it into evidence and an assistant prosecuting attorney read the statement to the jury.

■ Bailey asserts first that the trial court should have excluded the statement under W.Va.Code § 57–3–3 (1966). West Virginia Code § 57–3–3 prohibits adverse testimony of one spouse against another, absent consent, in a criminal trial. Bailey and Kathy were married at the time of the trial, but the privilege against adverse spousal testimony applies to *testimony* and, as such, does not apply to Kathy Holcomb's statement to the police. We note with approval the decision of the Supreme Court of Kentucky in *Wells v. Commonwealth,* —— Ky. ——, 562 S.W.2d 622, *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978), on the subject of the marital privilege. In *Wells,* the defendant and his former wife were divorced at the time of the defendant's first trial, but remarried before the defendant's second trial. At the second trial, the defendant's spouse asserted her privilege not to testify against him. Nevertheless, the prosecution read the transcribed testimony of the wife at the defendant's first trial into evidence. The Supreme Court of Kentucky upheld the admission of the spouse's prior testimony. The court stated:

At its very best, the rule that one party to a marriage cannot be compelled to testify against the other ... is one of the most ill-founded precepts to be found in the common law. It is enough that it

---

1. Bailey also asserts as error the State's calling of Kathy Holcomb Bailey.

West Virginia Code § 57–3–3 (1966) provides, in part:

In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other except in the case of a prosecution for an offense committed by one against the other, or against the child, father, mother, sister or brother of either of them.

The State called Kathy Holcomb Bailey as a witness, but she did not take the stand in open court and said nothing before the jury. An *in camera* proceeding took place immediately. Kathy Holcomb Bailey's *in camera* testimony consisted of the following:

Q. What is your name?
A. Kathy Sue Holcomb Bailey.
Q. Mrs. Bailey, you have been subpoenaed to testify on behalf of the State of West Virginia, is that correct?
A. Yes, sir.
Q. Are you the wife of the defendant, Stevie Wayne Bailey?
A. Yes, I am.
Q. When were you married?
A. August 29.
Q. 1985?
A. Yes.

The wording of W.Va.Code § 57–3–3 "prohibits not only the testimony of a spouse but even the calling of the spouse as a witness." *State v. Evans,* 170 W.Va. 3, 287 S.E.2d 922, 925 (1982), *citing Wright v. Boles,* 275 F.Supp. 571 (N.D.W.Va.1967).

Since there was no evidence or testimony presented through Kathy Holcomb Bailey, the mere calling of her as a witness did not prejudice the jury so as to warrant reversal. Therefore, although the mere calling of Kathy Holcomb Bailey was error, it did not constitute reversible error.

continues to exist at all. When it is encountered it is better to be trimmed than enlarged.

*Id.* at 624. Kathy Bailey's statement to the police was not "testimony," and, like testimony given prior to marriage, was not protected by the marital privilege.

Bailey next alleges that the statement was inadmissible hearsay. The trial court admitted the statement under the catch-all exception set out in Rule 803(24).[2]

Recently this Court, in syllabus point 5 of *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987), set forth the requirements for admission of hearsay under Rule 804(b)(5) and its counterpart in Rule 803(24):

[F]ive general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded

the other party to provide that party a fair opportunity to meet the evidence. The trial court concluded correctly that factors two, three, four, and five were met in this case. The trial court found that the statement was offered as evidence of premeditation and malice; that the statement was more probative on the issue for which it was offered than any other evidence because the witness was unwilling to testify and defendant had invoked the spousal privilege; that the interest of justice would be served by admission of the statement because the defendant was charged with the murder of the witness's husband and because the defendant and the witness were married on August 19, 1985, less than a week before Bailey's trial; and that the State had given adequate notice that the statement would be used.

■■■ The record contains evidence sufficient to support a finding that factor one, trustworthiness, was satisfied also. Kathy was involved in an affair with the defendant at the time of the shooting and married him soon thereafter. Any statement that incriminated Bailey was, therefore, a statement against Kathy Holcomb's interest.[3] Also, she gave the statement to the police shortly after the murder, and verified that it was accurate as written. In addition, there was corroborating testimony by the Holcombs' daughter that Bailey came to the Holcomb residence on the day that Kathy Holcomb told the police the threat against Holcomb was made.[4]

2. W.Va.R.Evid. 803(24) makes admissible:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

3. A statement against one's *social* interest does not fall within W.Va.R.Evid. 804(b)(3) (state-

ment against interest exception to hearsay). *Statements that tend to make a defendant an object of hatred, ridicule, or disgrace, in the view of Congress, lack sufficient guarantees of reliability to merit automatic admission. See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* 804–12–16 (1985) (reporting the legislative history of Fed.R.Evid. 804(b)(3)) (W.Va.R.Evid. 804(b)(3) is virtually the same as the federal rule). While standing alone a statement against social interest is not sufficiently trustworthy to constitute an exception to the rule against hearsay, it has some indicia of trustworthiness. *Cf. McCormick's Handbook on the Law of Evidence* § 278, at 674–75 (E. Cleary 2d ed. 1972) (declarations against social interest seem adequately buttressed in trustworthiness to be admitted as statements against interest).

4. The trustworthiness of the statement is demonstrated further by Bailey's failure to chal-

We find on these facts sufficient indicia of trustworthiness to sustain the admission of the statement under Rule 804(b)(5).[5]

## II.

Bailey alleges further that the trial court erred in failing to excuse prospective juror Muncy for cause.[6]

During voir dire, Muncy indicated that she was employed as a social worker by the Department of Human Services and dealt with the office of the prosecutor in child placements and home investigations. She indicated that her job did not, to her knowledge, involve Bailey's case in any way.

At the conclusion of voir dire, Bailey's counsel moved to strike prospective juror Muncy for cause, alleging that she might have knowledge of the case through her work with the Department of Human Services. Bailey's counsel indicated that Muncy's division of the Department of Human Services had investigated the relationship between Bailey, Kathy Holcomb, and the Holcomb children. The trial judge inquired whether Muncy had been questioned during voir dire as to any involvement with the Bailey-Holcomb investigation. Counsel re-

sponded that Muncy had not been questioned as to the investigation specifically, but had indicated that she had no knowledge of this case. The trial judge refused to strike Muncy for cause, and Bailey's counsel removed Muncy by peremptory strike.

Bailey argues that the trial court erred in not conducting further inquiry as to prospective juror Muncy. "A fair trial requires a meaningful and effective voir dire examination." *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 355, 211 S.E.2d 349, 353 (1975). Bailey argues correctly that jurors who on voir dire indicate possible prejudice should be questioned individually either by the court or by counsel to determine precisely whether they entertain bias or prejudice requiring their excuse. *State v. Pratt*, 161 W.Va. 530, 538–39, 244 S.E.2d 227, 231–32 (1978). Moreover, when a trial court determines that prospective jurors have been exposed to information which may be prejudicial, the trial court, upon its own motion or motion of counsel, must question or permit the questioning of the prospective jurors individually. *State v. Finley*, 177 W.Va. 554, 355 S.E.2d 47, 51 (1987). Additionally, the inquiry made of a

---

lenge the statement on cross-examination. Cross-examination is praised as the fundamental test of truth. 5 J. Wigmore, *Evidence* § 1367 (Chadbourn rev. 1974). When the opponent fails to take advantage of the opportunity to cross-examine, "it must be supposed to have been because he believed that the testimony could not or need not be disputed at all or shaken by cross-examination." *Id.* § 1371, at 55. Thus, if Kathy Holcomb's statement was untrue, Bailey could have made Kathy available for cross-examination by waiving the marital privilege and allowing the State to call her as a witness. *See* W.Va.Code § 57–3–3 (1966).

5. Rule 804(b)(5) contains the same language as Rule 803(24). The factor distinguishing Rule 803 hearsay exceptions from 804 hearsay exceptions is "unavailability." Rule 804 provides hearsay exceptions in situations in which the declarant is unavailable as a witness. *See State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188, 197 n. 13 (1987). Under Rule 803 the availability of the declarant is immaterial. Rule 804(a)(1) provides that unavailability includes situations in which the declarant "is exempted by ruling of

the court on the ground of privilege." W.Va. R.Evid. 804(a)(1).

At trial, Kathy Holcomb's statement was admitted as an exception to hearsay under Rules 803(24) and 804(a)(1). Kathy Holcomb was rendered unavailable under 804(a)(1) when Bailey invoked the privilege against adverse spousal testimony pursuant to W.Va.Code § 57–3–3. Although the issue was not raised on appeal, we note that since Kathy Holcomb was rendered unavailable as a witness as defined by Rule 804(a)(1), the appropriate designation for admission of Kathy Holcomb's statement is 804(b)(5).

6. Bailey also assigns as error the trial court's failure to strike prospective juror Lilly for cause. Bailey's counsel moved to strike prospective juror Lilly for cause, stating that Lilly had indicated a hatred of adultery. No such statement appears in the record, nor does the record contain a request by Bailey's counsel for additional voir dire. We do not, therefore, address this assignment of error on appeal. This Court will not consider an error which is not preserved in the record. Syl. pt. 6, *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976).

jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused. *See, e.g., State v. Lassiter,* 177 W.Va. 499, 354 S.E.2d 595, 599 (1987).

The record is unclear as to whether Muncy had been exposed to information concerning the investigation of Bailey, Kathy Holcomb, and the Holcomb children, which may have been prejudicial. Furthermore, the record contains no request by Bailey's counsel for additional voir dire. The record is therefore insufficient for a determination by the judge that Muncy had been exposed to prejudicial information.

■ Thus, because the record on voir dire does not reflect that Muncy was exposed to prejudicial information, and because there was no request for additional voir dire, there was no error in the court's refusal to strike Muncy for cause. We hold, specifically, that where a prospective juror, who is not an employee of a prosecutorial agency, indicates during voir dire that her employment involves work with the prosecutor's office, there is no error in the trial court's refusal to strike the prospective juror for cause absent a showing on the record of bias or prejudice or a request by counsel for individual voir dire to determine whether such bias or prejudice actually exists.[7]

For the reasons set forth above, we find no error requiring reversal and therefore affirm the conviction of Stevie Wayne Bailey.[8]

Affirmed.

---

**7.** Bailey argues also that Muncy's employment in a law enforcement agency or prosecutorial agency required a per se disqualification for cause. *See State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883, 889 (1983). The Department of Human Services is neither a law enforcement agency nor a prosecutorial agency, however, and, therefore, the rule in *Beckett* does not apply in this case.

**8.** Other errors raised by Bailey were meritless, and we dismiss them summarily.