**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Willie FOX, Jr., Defendant–Appellant.**

**No. 91CA0388.**

Colorado Court of Appeals,
Div. IV.

May 6, 1993.

As Modified on Denial of Rehearing
June 10, 1993.

Certiorari Denied Dec. 6, 1993.

Cross–Petition for Certiorari Denied
(Fox) Dec. 6, 1993.

David F. Vela, State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge JONES.

Defendant, Willie Fox, Jr., appeals the judgment entered upon a jury verdict finding him not guilty of first degree murder, not guilty of second degree murder, but guilty of reckless manslaughter in the shooting death of an acquaintance. We reverse and remand the cause for a new trial.

The record reflects conflicting testimony regarding the circumstances leading up to the shooting incident, although there is general agreement as to certain events.

At some point during December 17, 1988, the defendant was in his living room when the victim, a long-time acquaintance, joined him there and they argued over the victim's use of the defendant's automobile. Defendant testified that the argument escalated and that he and the victim wrestled around the living room before the defendant ran to the bedroom to get his pistol. He related that when he returned with the gun, he told the victim to leave his house numerous times, but that the victim refused to leave. When the victim started to move toward him after refusing to leave, he shot the victim with the handgun.

The victim, at six-feet one-inch tall and 250 pounds, was a large man in relation to defendant, and the record reflects that he had a history of, and reputation for, violence. Defendant testified that the circumstances and his knowledge of the victim's violent propensities prompted him to use the pistol to defend himself.

Defendant's brother and another of defendant's acquaintances were in the kitchen at the time the argument began, and they corroborated certain aspects and disputed other aspects of defendant's testimony. Neither of the two saw the actual shooting occur.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

After defendant shot the victim, he walked out the back door of his home and told a maintenance worker to call the police because he had shot someone. The victim died from a gunshot wound to his head. This prosecution followed.

Following hearings on numerous motions, including motions to suppress evidence, the case proceeded to a jury trial, in which the jury returned the verdict at issue here.

## I.

■ Defendant first contends that the trial court abused its discretion in denying his motion for mistrial and his motion for new trial based on juror misconduct. He maintains that there was a reasonable possibility that information independently obtained by the jury foreman affected the verdict and that the extraneous information was both prejudicial to him and violative of his right to a trial by a fair and impartial jury. We agree.

After closing arguments and about three hours of deliberation, the jurors recessed for the evening with the trial court's specific instruction not to discuss the case with anyone until court reconvened. The next morning defense counsel moved for a mistrial because an anonymous source had informed him that a juror fitting the description of the jury foreman had been in a bar the previous evening and had been asking numerous questions about the mechanics and abilities of a .25 caliber automatic pistol, which was the type of weapon used by defendant in the shooting. The trial court proceeded to conduct *in camera* individual voir dire with each of the jurors to determine the veracity of the allegation.

During that examination, the jury foreman admitted being in the bar on the previous evening, but he denied discussing the case with anyone else. All of the remaining jurors denied any extraneous discussions about the case. Pending any further revelations, the trial court then deferred ruling on defendant's motion for mistrial. Thereafter, the jury returned a guilty verdict of reckless manslaughter.

Prior to sentencing, pursuant to his motion for new trial, defense counsel requested a hearing based on further investigation of the juror misconduct. Two witnesses testified to having conversed with the jury foreman in the bar that he had admitted patronizing.

One of the witnesses, a gunsmith, testified that the jury foreman had identified himself as such and had asked about the range and shell ejection pattern of the type of pistol used in the shooting. The gunsmith explained to the foreman that the pistol would eject its shell upward and to the right upon firing. He also told the foreman that it was not an accurate gun, and that its accuracy depended on the distance from which it was fired. Specifically, he had informed him that, at the distance of 15 to 20 feet: "If you unload the whole clip you might hit somebody once with it." The conversation related by the gunsmith was corroborated by the second witness who was present at the bar with the foreman.

Testimony at the hearing was also elicited from a district attorney's investigator who had interviewed all of the jurors regarding their knowledge of the extraneous information obtained by the jury foreman. The investigator stated that six or seven of the jurors were aware of at least some of the information that the foreman had garnered at the bar and that they had discussed the gun's shell ejection pattern in their deliberations.

Defense counsel argued that evidence relating to the gun's shell ejection pattern and accuracy was not admitted at trial and that this externally received information was impermissibly prejudicial under the standard set forth in *Wiser v. People*, 732 P.2d 1139 (Colo.1987). The trial court disagreed and denied the motion for new trial.

In *Wiser*, our Supreme Court held that, following exposure of jurors to extra-record sources of information about a case, the need for a new trial should be determined by evaluating the nature and circumstances of the improper contact and employing an objective test of whether there

is a reasonable possibility that the extraneous information or influence affected the verdict and thereby prejudiced the defendant. *See* CRE 606(b). The determination of whether such prejudice has occurred is within the discretion of the trial court. *People v. Garcia,* 752 P.2d 570 (Colo.1988).

Circumstances comparable to the case at hand were examined in *People v. Staggs,* 740 P.2d 21 (Colo.App.1987), wherein a juror conducted an independent investigation as to the feasibility of the accused being both at the crime scene and at a location specified by his alibi defense within a certain time period. Contrary to defense witnesses, the juror determined that he could have been at both places, and she informed the other jurors of her investigation and conclusions. A division of this court determined that the information obtained by the juror pertained to the key issue of the credibility of the accused versus the victim and, accordingly, concluded that the juror's conduct required reversal. *See also Ravin v. Gambrell,* 788 P.2d 817 (Colo.1990) (bailiff's improper comments influenced the jury's ultimate verdict and required reversal).

Here, a key issue was defendant's asserted self-defense, and the extraneous information obtained by the jury foreman could have been used to impeach the credibility of the defendant's and witnesses' statements relating to that asserted self-defense. Specifically, the record reflects that the ejection of the shell casing in a certain direction conflicted with testimony regarding where defendant was standing when the pistol was fired. In addition, the jurors could have concluded that, because of the gunsmith's revelations regarding the pistol's inaccuracy, careful aim would have been necessary for defendant to have hit the victim.

Neither of the parties was able to cross-examine the jury foreman or otherwise rebut the validity of his extraneous information. *See Destination Travel, Inc. v. McElhanon,* 799 P.2d 454 (Colo.App.1990). Hence, as in *People v. Staggs, supra,* the implications that the jurors could have adduced from the extraneous information

could have affected their verdict, thereby prejudicing the defendant.

Moreover, the jury foreman did not innocently come by the information, but also possibly perjured himself in response to questioning from the court regarding the matter. *Cf. Stevens v. Humana of Delaware, Inc.,* 832 P.2d 1076 (Colo.App.1992) (information came innocently into juror's possession).

Additionally, it was the jury foreman, whom the other jurors had elected as their spokesperson, who obtained and disseminated the information, thereby increasing the likelihood that the information could have affected the verdict. Under these circumstances, we conclude that the defendant was deprived of his right to a trial by a fair and impartial jury.

Accordingly, although the trial court properly conducted an examination of the individual jurors to determine whether the information had a prejudicial effect, *see Harper v. People,* 817 P.2d 77 (Colo.1991), we conclude that the trial court abused its discretion in denying defendant's motion for mistrial and his motion for new trial based on the prejudicial nature of the extraneous information.

We decline to consider defendant's contention regarding the presence of alternate jurors during deliberations because it is unlikely that, upon retrial, an alternate juror will be placed in a position so as to give the appearance that he or she participated in deliberations. We likewise deem it unnecessary to consider the trial court's response to a jury inquiry.

## II.

■ Among issues which may arise on retrial is defendant's contention that he retained a reasonable expectation of privacy in his wife's motel room and the personal belongings therein. Thus, he argues, the trial court erred in ruling that he had no standing to object to the search of the room. We agree.

After defendant was arrested and while he was being held in jail, his wife moved

into a motel because she was unable to maintain their home without his income. While in the motel room, in an unrelated episode, defendant's wife was stabbed. A search incident to the stabbing investigation led to the discovery of a briefcase, or satchel, containing numerous letters from defendant to his wife.

The People sought to introduce the letters as evidence in defendant's trial, and defendant moved for their suppression. The trial court denied the motion to suppress, ruling that defendant had no standing to contest the search and seizure.

■ In order for a defendant to have standing to challenge the constitutionality of a governmental search, he must demonstrate that he has a legitimate expectation of privacy in the areas searched or the items seized. The defendant bears the burden of establishing standing, and the issue must be resolved in view of the totality of the circumstances. *People v. Juarez,* 770 P.2d 1286 (Colo.1989).

■ Moreover, Fourth Amendment rights are personal and may not be vicariously asserted. Thus, one who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not suffered an infringement of his Fourth Amendment rights. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Juarez, supra.* Hence, a person who cannot demonstrate a legitimate expectation of privacy in an area to be searched or property to be seized by virtue of some possessory or propriety interest in the area or items may have no standing to object to the search or seizure. *Cf. Rakas v. Illinois, supra; People v. Juarez, supra; People v. Tufts,* 717 P.2d 485 (Colo.1986); *People v. Whisler,* 724 P.2d 648 (Colo.1986).

Here, the trial court found that, because defendant had never resided in the motel room with his wife because of his incarceration, he lacked standing to contest the search of the motel room and seizure of items therein. The court expressly based its ruling on *People v. Whisler, supra.* We determine the trial court's reliance upon the *Whisler* holding to have been misplaced.

In *Whisler,* the defendant was found to have standing to contest a search of an apartment that he shared with a roommate, but the roommate's consent to a search of the apartment negated the validity of any objection defendant could have raised. In addition, the *Whisler* court determined that, in conjunction with such consent, defendant had no standing to object to the search and seizure of property that was in the exclusive possession and control of his roommate.

Here, the trial court found that defendant had never resided in the motel room, unlike the roommate in *Whisler.* However, the court also found that defendant was married to the occupant of the motel room and the record reflects that, up until the point that defendant was incarcerated, he and his wife were living together in their marital abode with their children. His wife's un-rebutted testimony was that, but for his incarceration and the resultant lack of income necessary to maintain the marital domicile, defendant would still have been living with her, that he would have had uninhibited access to the premises, and that he would not have been required to knock before entering the motel room. Both defendant and his wife testified that all of his personal possessions were located in the motel room.

■ There is a presumption that all property acquired during the term of the marriage is deemed marital property. *See* § 14-10-113, C.R.S. (1987 Repl.Vol. 6B). Thus, a husband and wife have a mutual proprietary interest in their marital domicile. Furthermore, should either a husband or wife be absent from the marital abode for a period of time, normally each retains standing to object to a search of the marital domicile and property therein, unless they are legally separated, or evidence otherwise demonstrates a clear lack of standing because of the absence. *See People v. Payne,* 839 P.2d 468 (Colo.App.1992).

Here, the evidence reflects that defendant and his wife would have remained together in their marital domicile were it not for his incarceration, which forced his wife to transfer the marital domicile to the motel room. Thus, the wife's interest in the motel room was an interest which defendant shared even during his absence. Accordingly, the circumstances here indicate that defendant had a proprietary interest in the room, *see People v. Juarez, supra; People v. Payne, supra,* and defendant, like the roommate in *People v. Whisler,* had standing to object to the search of the motel room.

We also conclude that the circumstances here are distinguishable from those in *Whisler* because, in contrast to the situation there, the satchel which was seized was not in the exclusive possession of the wife. Rather, here, the evidence establishes that both defendant and his wife used the satchel and had joint access to the satchel and its contents. The evidence, therefore, supports defendant's contention that the satchel and its contents were marital property in which he thereby had a possessory and proprietary interest. *See People v. Juarez, supra; People v. Payne, supra;* § 14–10–113, C.R.S. (1987 Repl.Vol. 6B). Consequently, we determine that defendant had standing to object to the seizure of the satchel and its contents.

Accordingly, upon remand, the trial court is directed to conduct a suppression hearing based on the premise that defendant did, in fact, have standing to object to a search of his wife's motel room and seizure of the satchel located within.

### III.

■ Without deciding whether the search of the marital domicile was proper, we elect to consider defendant's additional contention that the trial court erred in admitting parts of certain letters he had sent to his wife because admission of the letters violated his rights under the marital privilege statute. We do not agree with defendant.

Confidential communications between a husband and wife are inadmissible into evidence against either spouse, absent the consent of the spouse against whom the communications are offered. Section 13–90–107(1)(a)(I), C.R.S. (1992 Cum.Supp.). However, the General Assembly has provided a *caveat* to the general privilege set forth in the statute, as follows:

> Communications between a husband and wife are not privileged ... if such communications are made for the purpose of aiding the commission of a future crime or of a present continuing crime.

Section 13–90–107(1)(a)(III), C.R.S. (1992 Cum.Supp.).

Here, the trial court determined that, as to certain letters written by defendant to his wife, parts of the letters were written for the purpose of aiding the commission of a future crime, namely, witness tampering under § 18–8–707, C.R.S. (1986 Repl.Vol. 8B). After making extensive findings as to those portions of the letters relating to witness tampering, and identifying portions as to which the privilege continues to apply, the trial court ordered that the letters, as edited, would be admitted.

We conclude that the trial court correctly determined that portions of the written communications were made to aid the crime of witness tampering. Such offense is committed if a person:

> intentionally attempts without bribery or threats to induce a witness or victim or a person he believes is to be called to testify as a witness or victim in any official proceeding or who may be called to testify as a witness to or victim of any crime to: (a) Testify falsely or unlawfully withhold any testimony; or (b) Absent himself from any official proceeding to which he has been legally summoned; or (c) Avoid legal process summoning him to testify.

Section 18–8–707, C.R.S. (1986 Repl.Vol. 8B). *See People v. Moyer,* 670 P.2d 785 (Colo.1983) (interpreting identical predecessor statute to § 18–8–707).

The record reveals that in one of the letters defendant told his wife "to tell [one

witness] not to come [to the trial]," and writes in another: "I just don't want [the witness] there, she'll fuck everything up for me." Read in context, we agree with the trial court that these statements, and others, appear to be efforts by the defendant to compel his wife to persuade the witness not to appear. He also had included language which could reasonably be construed as seeking to influence his wife's appearance at trial.

■ The trial court admitted another letter because a postscript therein is addressed personally to his brother. We conclude that the postscript forms the basis for a waiver of the spousal privilege as to that letter. *See South Carolina Insurance Co. v. Fisher*, 698 P.2d 1369 (Colo. App.1984).

In another letter, defendant tells his wife to give a false trial date to certain witnesses in the hope that they will miss the trial. He also urges his wife to "keep [his brother] out of [sight] for me ...," and to tell others, including the prosecution, that the brother has moved to another state. He also states that he would like another witness and his brother to "hide out."

Finally, defendant indicates in a letter that he will call another witness himself and instruct her on "what to say and what not to say" in her testimony. In the context of the letter, this reference implies an intentional attempt by defendant unlawfully to induce the witness to testify falsely or to withhold testimony.

■ Application of an exception to a testimonial privilege having to do with furthering a crime is addressed to the sound discretion of the trial court, and its ruling will not be reversed absent the showing of an abuse in the record. *People v. Board*, 656 P.2d 712 (Colo.App.1982). Hence, we conclude that the record amply supports the trial court's ruling on the portions of the letters found admissible. Here, should the issue arise upon remand, such evidence will be admissible.

## IV.

■ Finally, defendant contends that the trial court erred in refusing to order the prosecution to obtain and disclose the criminal histories of all prosecution witnesses, including police officers. He argues that the trial court's ruling violated the mandates of Crim.P. 16. We do not agree.

Crim.P. 16(I)(a)(1)(V) provides that a prosecutor shall disclose to defense counsel: "Any record of prior criminal convictions of ... any person the prosecuting attorney intends to call as a witness in the case."

Defense counsel argued that the mandates of this rule apply to discovery of any criminal record pertaining to police officers. In response, the trial court ruled that the import of the rule is to allow for the testimony or for the credibility of a particular witness to be impeached by virtue of prior criminal convictions. As such, the trial court reasoned, there is sufficient evidence of reliability without regard to the criminal histories of police officers and members of the Colorado Bureau of Investigation.

The trial court's reasoning is apparently premised upon its acceptance of the prosecution's argument that it would be unlikely for a person with a criminal history to survive the screening procedures undertaken with regard to candidates for law enforcement positions. Specifically, the prosecution observes that police officers or peace officers could not have been, and cannot be, statutorily qualified for the position if they have been convicted of a felony or a crime involving moral turpitude. *See* § 24-31-305, C.R.S. (1992 Cum.Supp.); § 24-33.5-306, C.R.S. (1988 Repl.Vol. 10A).

■ We find this rationale persuasive. Because police officers cannot, pursuant to statute, be qualified for their positions if they have criminal histories that could be used for impeachment purposes pursuant to Crim.P. 16, the trial court did not err in declining to order the prosecution to obtain and disclose the criminal histories of the police officer witnesses. However, we ap-

prove of the trial court's order requiring the prosecution to disclose any criminal history of a police officer witness if it is aware of or becomes aware of any evidence that such a history exists. Crim.P. 16(I)(a)(1)(V).

Accordingly, the judgment of the trial court is reversed. The cause is remanded for a new trial and other proceedings consistent with this opinion. Additionally, we note that principles of double jeopardy prevent defendant's retrial on the charges of first and second degree murder.

PLANK and MARQUEZ, JJ., concur.