565 S.E.2d 399

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gypsy Buck BOHON, Defendant Below, Appellant.**

No. 30014.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2002.

Decided May 8, 2002.

Concurring Opinion of Justice Maynard July 3, 2002.

S. Sean Murphy, Esq., S. Sean Murphy, L.C., James B. Zimarowski, Esq., Morgantown, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for Appellee.

McGRAW, Justice.

This is an appeal by Gypsy Buck Bohon from an order of the Circuit Court of Monongalia County sentencing him to 40 years in the State Penitentiary for second degree murder. The sentence was imposed after the appellant had plead conditionally guilty to the crime charged.

On appeal, the appellant contends that he was, in effect, compelled to plead guilty because the trial court improperly denied his motion *in limine* to prohibit the prosecution from introducing certain evidence. The evidence which he sought to exclude consisted of prior trial testimony given by Roy Benny Helmick, another individual implicated in, and indicted for, the murder with which the appellant was charged. Other evidence which he sought to exclude consisted of certain statements which the appellant made to his wife, statements which he claims were confidential under the marital privilege statutes, and which were not, thus, properly admissible into evidence.

In the present appeal, the appellant claims that the circuit court's *in limine* rulings were erroneous and that, if the circuit court had properly excluded the evidence, he would not have plead guilty to the crime charged. He claims that under the circumstances, his conviction should be set aside.

I.

FACTS

On March 26, 1998, Brian Steven Crihfield was brutally murdered in his trailer in Monongalia County, West Virginia. A subsequent investigation of the case suggested that Roy Benny Helmick and the appellant Gypsy Buck Bohon were the perpetrators of the crime, and they were subsequently indicted for the crime.

Roy Benny Helmick was tried before the appellant, and during his trial he gave testimony potentially implicating the appellant.

Prior to the appellant's trial, Roy Benny Helmick took the position that he would not testify at the appellant's trial, and that he would invoke his Fifth Amendment right

against self-incrimination if called as a witness. Because of this, the State proposed to read Mr. Helmick's prior trial testimony during the appellant's trial. Before the appellant's trial began, the appellant's attorney moved *in limine* that the court prohibit the prosecution from reading this testimony. The trial court denied the motion.

The State also indicated it intended to introduce certain remarks which the appellant had made to his wife and which the wife, and the appellant himself, had later communicated to third parties. These communications had originally been made by the appellant to his wife in the presence of the parties' eight-month-old child. The appellant moved that the trial court prohibit the admission of the remarks because, he claimed, they constituted privileged communication under the marital privilege statutes. A question arose as to whether the statements were confidential in light of the fact that they were made in the presence of another person, the parties' child. The State also argued that the appellant had communicated the same facts to others, and that by telling others, he had surrendered his right to invoke the marital privilege. The court ruled that the remarks were admissible.

After the circuit court denied the appellant's motions to prohibit the introduction of the remarks made by Benny Roy Helmick and the remarks made by the appellant to his wife, the appellant, as has been previously stated, plead guilty to second degree murder.[1]

In the present appeal, the appellant claims that the circuit court erred in refusing to prohibit the prosecution from introducing the remarks which were the subject of his *in limine* motion, and that the circuit court's ruling, in effect, forced him to plead guilty.

II.

STANDARD OF REVIEW

■ In the present case, the issues raised by the appellant involve the legal correctness of the *in limine* rulings made by the trial court. In Syllabus Point 1 of *State v. Payn-*

1. In pleading guilty, the appellant reserved the
right to challenge the court's *in limine* rulings.

*ter*, 206 W.Va. 521, 526 S.E.2d 43 (1999), this Court stated:

> "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

## DISCUSSION

The appellant's first claim on appeal is that the circuit court erred in denying his *in limine* motion that the State be prohibited from reading the testimony previously given by Benny Roy Helmick at Mr. Helmick's own trial. The appellant essentially argues that prior to trial, it was clear that Roy Benny Helmick intended to invoke his Fifth Amendment right against self-incrimination and would not testify. He claims that under the circumstances, Mr. Helmick would not have been available for cross-examination, that to allow the reading of Mr. Helmick's prior trial testimony would violate the appellant's own Sixth Amendment right to confrontation, and that the circuit court's *in limine* ruling was, therefore, erroneous.

In its brief, the State confesses error on this point. The brief states:

> In the absence of the right to cross-examine or a functional substitute sufficient to ensure the reliability of former testimony, the Appellant's rights would be violated under the confrontation clause of Article III, § 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution.

The State also goes on to say:

> After long and thoughtful consideration, the State concedes that there was error in this case arising from the above assignment of error and that reversal of the Appellant's conditional guilty plea is warranted.

After examining the question, this Court notes that in Syllabus Point 1 of *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975), the Court stated: "The fundamental right to confront one's accusers, which contemplates the opportunity of meaningful cross-examination, is guaranteed by Article III, Section 14 of the West Virginia Constitution." The Court also agrees with the State's confession of error in the present case and concludes that the trial court did err in refusing to grant the *in limine* motion relating to the testimony of Benny Roy Helmick because the reading of such testimony, in the absence of Mr. Helmick himself, would deprive the appellant of the opportunity to cross-examine Mr. Helmick. Under the circumstances, the appellant's conviction, and his guilty plea, must be set aside.

The appellant's second claim is that the trial court erred in denying his motion to exclude the testimony relating to his communications with his spouse. Two West Virginia statutes, W. Va.Code 57-3-3 and W. Va. Code 57-3-4, create marital testimonial privileges in West Virginia. In *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995), this Court indicated that the two statutes are distinct and must be analyzed separately. The first statute creates what is referred to as the spousal testimony privilege and indicates that a husband or wife shall not be allowed or compelled to testify in a proceeding against the other except in the case of a prosecution for an offense committed by one against the other or in a case against the child, father, mother, sister, or brother of either of them. The spousal testimony privilege is not the privilege in issue in the present case. The privilege involved in the present case is the second privilege, a privilege created by W. Va.Code 57-3-4. That statute provides that:

> Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

This is the so-called marital confidence privilege. *See, State v. Bradshaw, id.*

In *State v. Bradshaw, id.*, the Court indicated that for this so-called marital confidence privilege to exist, it is necessary that a

statement made by one spouse to the other be a confidential communication. In *Bradshaw*, the Court further stated that: "The test for determining whether acts or conduct of a spouse constitutes [sic] confidential communication [for the purposes of the marital confidence privilege] is 'whether the act or conduct was induced by or done in reliance on the confidence of the marital relation, i.e., whether there was an expectation of confidentiality.'" *Id.* at 536, 457 S.E.2d at 473. The Court went on to mention the prior holding by this Court in *State v. Bailey*, 179 W.Va. 1, 365 S.E.2d 46 (1987), and to recognize that there is a presumption that all communication between spouses is confidential and that if the State wishes to introduce such communication, it was incumbent upon the State to prove that the communication was not confidential. Further, in *State v. Bradshaw, id.*, the Court pointed out that confidentiality is to be tested from the perspective of the communicator, not the communicatee.

The trial court in the present case determined that the communications by the appellant to his wife were not covered by the marital confidence privilege for two reasons. Specifically, the court found that there was no expectation of confidentiality at the time the statements were made and that the privilege did not thus apply, and the court also found that both parties had waived the marital confidence privilege by afterwards communicating the essence of the remarks to third parties. Specifically, the trial court stated:

> The privilege that we are addressing in this matter deals with the confidential communications privilege, which makes communications between the spouses confidential and stands independent of the testimonial privilege.

And the issue in this case is whether that privilege has been waived by Mrs. Bohon and/or Mr. Bohon. At the last hearing the testimony was that—or the proffer of the testimony of Mr. Bohon and Mrs. Bohon was that they did not intend to waive that [testimonial] privilege. However, it is the ruling and the finding in the order of the Court that both Mr. Bohon and Mrs. Bohon have waived the confidential communications privilege, and once that privilege is waived, it's waived. It can no longer be asserted.

That privilege was waived in several respects actually, all of which indicate permissibility of the statements. It was waived first because it was made—the statements were made in the presence of a third person. Now, the Court is cognizant of the fact that the proffer was that the third person was an eight-month-old child who was asleep at the time . . .

The Court further finds that the defendant, Gypsy Buck Bohon, waived the confidential marital communications privilege when he made essentially the same or very similar statements to other third parties. The State's proffer, which was consistent with statements that are contained in the discovery disclosures, was that Mr. Bohon made the same or similar statements to at least other individuals during the course of the marriage. The Court finds that that, on the part of Mr. Bohon, is a waiver of the confidential communication privilege and would allow its use.

Now, the Court is cognizant of the fact that Mrs. Bohon also has a confidential communication privilege which she can assert. The Court also finds that she waived that privilege. She waived that privilege in several respects, first of all, by communicating or relaying the communications that Mr. Bohon had made to her to other third parties, specifically her mother.

■ As has been previously stated, this Court in *State v. Bradshaw, id.*, indicated that all communication between husband and wife is presumed to be confidential and that it is incumbent upon the State to prove otherwise.

■ The conversation between the appellant and his wife which is in issue in this case, took place in the couple's automobile and was conducted during the course of the couple's marriage. The couple's infant child was present at the time the conversation occurred. However, the child was less than one-year-old and was bundled up in the back seat of the couple's automobile securely fastened in a child seat.

In attempting to persuade the court to exclude the testimony as being covered by the marital confidence privilege, the appellant introduced the testimony of an expert in the field of psychiatry and child development, Dr. Donald Carl Fidler, M.D. Dr. Fidler indicated that an eight-month-old infant, such as the one who was in the back seat at the time of the conversation in issue, would not be able to understand the meaning of words or the order of words, and that such an infant would not be able to comprehend the meaning of sentences.

In *Nash v. Fidelity–Phenix Fire Insurance Company,* 106 W.Va. 672, 146 S.E. 726 (1929), this Court inferred that for a spousal communication made in the presence of a third party not to be considered confidential, and thus not privileged under the marital confidence privilege, the third party must be a comprehending third party, that is, a party capable of understanding the communication. The Court believes that this is consistent with the holding in *State v. Bradshaw, supra,* that the test for determining whether a spousal communication is confidential is whether the communicator had an expectation of privacy at the time the communication was made, because common sense dictates that it would not be contemplated that a communication made in the presence of a non-comprehending third party would later be revealed by that third party.

The testimony of Dr. Fidler, in the present case, as well as ordinary reason, suggests that the infant who was present when the conversation in issue in the present case occurred was not a comprehending party and that under the circumstances, the trial court erred in finding that the communication made by the appellant to his wife was not a confidential communication.

The Court notes that the trial court also found that the communication was not confidential because both the appellant and his wife later communicated the essence of it to a third party, that the marital privilege was thus, in effect, waived.

In 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 5–4(D)(3)(d) (4th ed.2000), it is stated that the West Virginia rule appears to be that both marital partners hold the marital confidence privilege and the privilege may be claimed by either spouse. This is borne out by the clear language of W. Va.Code 57–3–4 that "[n]either husband nor wife shall, *without the consent of the other,* be examined in any case as to any confidential communication made by one to the other while married . . ." (emphasis supplied).[2] The Court believes that as a consequence of this, only an accused can waive the marital confidence privilege during a criminal prosecution.

While the Court has stated that the fact that a communication is made in the presence of a third party may be considered a suggestion that the communication was not intended to be confidential, the Court is unaware of any case in this State which holds that the fact that one party later communicates the substance of the communication to a third party, after the communication was originally made, destroys the confidentiality of the communication or constitutes a waiver of the privilege, and the Court believes that it should not.[3] On the other hand, when the

---

**2.** For the full text of W. Va.Code 57–3–4, *see supra.*

**3.** In 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 5–4(D)(2)(b) (4th ed.2000), it is stated:

The privileges may be waived . . . by express or implied consent of the spouse or spouses entitled to the privilege, e.g., the witness-spouse takes the stand and testifies without objection being made. Waiver of objection also occurs where the witness-spouse testifies in favor of the accused-spouse, provided the cross-examination is limited to the issues covered on direct examination and credibility. An accused can always call her spouse to testify as a witness on her behalf. When the accused calls her spouse to testify, the prosecution can cross-examine as to those matters covered, or matters directly related to those matters covered, on direct examination. Thus, once an accused calls her spouse to testify, the prosecution may cross-examine that witness exactly as any other witness except that *confidential communications* remain privileged unless the defendant waives them or unless the defendant is charged with domestic violence or child abuse. To be clear, if the witness-spouse testifies *in favor* of the accused-spouse, the *spousal competency privilege* may not be asserted on cross-examination. It is further stated that:

substance of a privileged communication is communicated to a third party, the third party may testify as to the communication, so long as the third party's testimony is otherwise admissible. As stated in 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 5–4(d)(2)(a) (4th ed. 2000): "Even if the spouse invokes the privilege, it does not apply to extrajudicial statements. Thus, third persons may testify to statements made outside the courtroom by the witness-spouse when offered against the defendant-spouse."

In view of the foregoing, this Court believes that the judgment of the Circuit Court of Monongalia County must be reversed, and that the appellant must be allowed to withdraw his guilty plea. Upon any retrial, provided a proper motion is made, the State should be precluded from introducing the transcript of Roy Benny Helmick's prior testimony unless Mr. Helmick appears in such a way as to afford the appellant the right of cross-examination. Further, the appellant's spouse should be precluded from testifying as to the confidential remarks made by the appellant which have been discussed herein.

The judgment of the Circuit Court of Monongalia County is, therefore, reversed, and this case is remanded for further proceedings consistent with what is stated herein.

Reversed and remanded with directions.

MAYNARD, Justice, concurring.

(Filed July 3, 2002)

I agree with the majority that the circuit court's order must be reversed and the appellant must be allowed to withdraw his guilty plea. Upon remand, if the appellant's case goes to trial, I agree that the State should be precluded from introducing the transcript of Roy Benny Helmick's prior testimony unless the appellant is afforded his right of cross-examination. I also agree that in order for a spousal communication made in the presence of a third party not to be considered confidential, the third party must be a comprehending third party. I agree as well that only the accused can waive the marital privilege during criminal prosecution. However, unlike the majority, I·believe the appellant waived his confidential marital communications privilege when he communicated the privileged information to third parties. Therefore, I write separately.

The majority summarily states that they are unaware of any case *in this State* which holds that after a spouse communicates privileged information to a third person, the confidentiality is destroyed and the privilege is waived. The majority then concludes that if the appellant's case goes to trial, the appellant's wife "should be precluded from testifying as to the confidential remarks made by the appellant[.]" If the majority had researched this issue outside of West Virginia, they would have found that many other jurisdictions, when faced with this precise issue, have reached the opposite result.

For example, in *Weedon v. State,* 647 A.2d 1078 (Del.Supr.1994), *reversed on other grounds, Weedon v. State,* 750 A.2d 521 (Del. Supr.2000), the defendant, William Weedon, Jr., was convicted by a jury of numerous crimes including attempted first-degree murder. After he severely beat the victim, the defendant returned home, told his wife the details of the crime, and asked her not to tell anyone. However, the defendant immediately told several neighbors that he had assault-

Waiver of the statutory protection may occur in another situation, i.e., the failure to comply with Rule 103(a)(1) and (2). When a violation of the statute occurs, it is the obligation of the defendant to object and ask for appropriate relief. In this regard, an objection that merely cites W. Va.Code § 57–3–3 is specific enough to preserve for appeal a violation of the marital competency rule. The court stated [in *State v. Bradshaw,* 193 W.Va. 519, 538, 457 S.E.2d 456, 475 (1995)]: "Because the statute deals only with one subject, we find that merely citing it is enough to meet the specificity requirements of Rule 103(a)(1).

As a corollary to this, the Court notes that in Syllabus Point 1 of *Wimer v. Hinkle,* 180 W.Va. 660, 379 S.E.2d 383 (1989), that: "An objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evidence was offered, unless there has been a significant change in the basis for admitting the evidence."

In the present case, the appellant did object and did ask for appropriate relief.

ed the victim earlier that morning. At the defendant's trial, Mrs. Weedon testified by reciting the details of the crime which the defendant had confided in her. On appeal, the defendant argued, *inter alia*, that the trial court erred by admitting Mrs. Weedon's testimony regarding the conversation over Weedon's marital communication privilege objection. The Supreme Court of Delaware reasoned that "[d]isclosure by a speaker-spouse to a third party of subject matter that parallels that of an earlier, otherwise privileged marital communication constitutes waiver." *Id.* at 1081. The court held, "Weedon waived the privilege [ ] by his subsequent actions. In disclosing to third parties [ ] that he 'took care' of Ward, Weedon repeated in substance (absent details) that which he had earlier told his wife to keep secret." *Id.* at 1082.

In *State v. Boucher*, 652 A.2d 76 (Me.1994), a jury convicted the defendant, Michael Boucher, Sr., of murder. The State connected Boucher to the murder with his own statements which he made to various people over thirteen years. The trial court admitted the testimony of his two ex-wives finding that the defendant waived the marital privilege by revealing in non-privileged communications much of what he told them. On appeal, Boucher contended the trial court erred by admitting this testimony. The Supreme Judicial Court of Maine held that the trial court did not err by finding "that in disclosing to third parties the 'key element' of his communications to [his ex-wives] [defendant] waived protection as to all communications relating to the incident." *Id.* at 77. *See also People v. Fox*, 862 P.2d 1000, 1006 (Colo.1993) ("The trial court admitted another letter because a postscript therein is addressed personally to his brother. We conclude that the postscript forms the basis for a waiver of the spousal privilege as to that letter."); *State v. Wilkinson*, 136 N.H. 170, 612 A.2d 926 (1992) (The defendant waived his marital communication privilege with respect to a conversation regarding a hit-and-run accident when he revealed facts of his involvement with the incident to a friend, which was overheard by a witness.); *U.S. v. Lea*, 249 F.3d 632 (7th Cir.2001) (Confidentiality, as a necessary element of marital communications privilege, is lost when a spouse divulges to a third party the communication which he or she seeks to exclude from evidence.); *State v. Countryman*, 572 N.W.2d 553 (Iowa 1997) (The defendant waived any marital privilege applicable to her notes to her husband by leaving the notes in the car she and her husband had stolen, thereby exposing confidence to third parties.); *Hall v. State*, 720 So.2d 1043 (Ala. Crim.App.1998) (Even if a murder defendant's act of having a large amount of money in his wife's presence constituted a privileged confidential communication, the defendant waived protection of that privilege when he acknowledged in a statement to an investigator and in trial testimony that a third party had given him $5,500 in the days immediately following the murder and that he, in turn, gave some of the money to his wife and told her where he buried the rest.); and *Dansby v. State*, 338 Ark. 697, 1 S.W.3d 403 (1999) (The defendant's spousal privilege was waived in a capital murder trial when a third party testified that the defendant communicated the privileged matter to him by confessing to murders while they were both being held in jail, even though the third party's credibility was disputed and there was no indication the communications were overheard by others.).

I believe the great weight of authority supports the proposition that communication of any significant part of the privileged matter to someone other than the spouse waives the spousal privilege. The view in federal courts is that the defendant-spouse cannot prevent his or her spouse from testifying unless confidential communications are involved. *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). In other words, if privileged information has been communicated to third persons, only the witness-spouse has a privilege to refuse to testify adversely. Consequently, upon withdrawal of his guilty plea, if the appellant's case goes to trial, I would allow the appellant's wife to testify regarding the remarks the appellant made to her in confidence because the appellant himself later communicated these remarks to third persons.

Accordingly, I concur in the majority's final result. But I must disagree when we depart from the clear and overwhelming trend of the law regarding waiver of the spousal privilege by communication to third parties, and I strongly believe the majority is simply wrong on this issue.